ROSIER v. HALE, *et al.*

1. APPRAISEMENT: EXECUTION.   The act entitled "an Act to provide for
   the appraisement of property sold under execution," approved March
   31st, 1860, can not constitutionally apply to contracts entered into
   prior to the date of its taking effect.

*Appeal from Fayette District Court.*

FRIDAY, JUNE 29.

MOTION by the defendants to set aside a sale made by the

Rosier v. Hale, et al.

sheriff of Fayette county, under an execution issued from the Supreme Court.

*Milo McGlathery*, for the motion, contended that the act to provide for the appraisement of property sold under execution, should be so construed as to have a retrospective effect.

The motion was resisted by *Wm. McClintock*, attorney for the plaintiff, and *S. A. Rice* and *John N. Rogers* as *amici curiæ*, on the ground that the act entitled an "Act to provide for the appraisement of property sold under execution," is unconstitutional as to prior contracts. The following analysis of authorities upon this subject is condensed from the written argument of *Mr. Rogers*:

I. CASES UNFAVORABLE TO THE VALIDITY OF THE LAW.— [*Supreme Court of the United States.*] The cases generally considered as decisive of the question, are *Bronson* v. *Kinzie*, 1 How. S. C. R. 311; *McCracken* v. *Hayward*, 2 Ib. 608; and *Gantley's Lessee* v. *Ewing*, 3 Ib. 707. In *Bronson* v. *Kinzie*, (decided at the January term, 1843,) the question arose, whether the redemption and appraisement law of Illinois, of 1841, could constitutionally be applied to the foreclosure of a mortgage, made before the enactment of the law, and containing a power to the mortgagee, on default in payment, to enter upon and sell, and convey the mortgaged premises, for the payment of the debt. It was held that the law was unconstitutional as to such a mortgage, both as respected the provisions for appraisement and redemption. The opinion was delivered by TANEY, C. J., and lays no particular stress on the power of sale contained in the mortgage, but puts the decision mainly on the ground that the act is destructive of the rights conferred by a mortgage, as well understood and settled by the previous law. McLEAN, J., dissented, holding the law constitutional, as only modifying the remedy, and not impairing the obligation of the contract.

In *McCracken* v. *Hayward*, (decided at the January term,

1844,) it was farther held that the appraisement part of the same law was unconstitutional, as respected judgments rendered on contracts made before the enacting of the law. The opinion of the court was delivered by BALDWIN, J., and takes the broad ground, that the law as to the remedy by execution, in force at the making of the contract, enters into and forms a part of the contract, and can not constitutionally be altered, to the prejudice of the creditor. CATRON, J., concurred in the decision on other grounds, giving no opinion on the constitutional question.

In *Gantley's Lessee* v. *Ewing*, (decided at the December term, 1844,) it was held that the Indiana appraisement law was unconstitutional and void, as to a sale under foreclosure of a mortgage made before the law was enacted. The opinion was delivered by CATRON, J., who treats the question as settled by *Bronson* v. *Kinzie*.

The cases in the state courts unfavorable to the validity of law, are the following :

[*Kentucky.*] In *Blair* v. *Williams*, 4 Litt. 34, (decided in 1823,) it was held that a statute of Kentucky, providing that if the judgment creditor failed to consent to take paper of the Bank of the Commonwealth, or the Bank of Kentucky in payment, the defendant might have a two years' stay of execution, by entering into a recognizance to pay the judgment within that time, was unconstitutional as to prior contracts. The opinion, by BOYLE, C. J., is an elaborate argument in support of the broad proposition, that the obligation of a contract, (in the legal sense of the term,) consists in the remedy given by law to enforce it, and that hence, whatever impairs the remedy, impairs the obligation. This case was followed in the same court by *Lapsley* v. *Brashears*, 4 Litt. 47; *McKinney* v. *Carroll*, 5 Monr. 98, (1827,) and *Grayson* v. *Lilly*, 7 Monr. 6. (1828,) in all of which the same point was decided, and upon the same grounds.

In *Pool* v. *Young*, 7 Monr. 587, (1828,) it was held, that a law enacting that sales of estates under mortgage, should be made on a credit of two years, unless the mortgagee would

Rosier v. Hale, et al.

accept notes on the Bank of the Commonwealth in payment, and also that the estates should be valued before sale, and should bring at least three-fourths of such valuation, was unconstitutional as to a previous mortgage, giving the mortgagee power, in default of payment, to sell for cash.   And the court say that under the decisions in *Lapsley* v. *Brashears* and *Blair* v. *Williams,* (*ubi supra*,) the same would have been the case, if the mortgage had contained no such power.   To the same effect is the subsequent case (in the same court,) of *January* v. *January,* 7 Monr. 542, (1828,) the opinion being delivered by BIBB, C. J.

[*Georgia.*]   In *Forsyth* v. *Marbury,* R. M. Charlton 324, (a collection of decisions made in the different superior courts of Georgia, at a time when that State had no supreme appellate court,) it was held in 1830, that a law exempting from execution a certain portion of the judgment debtor's property, previously subject to the lien of the judgment, was as to prior judgments, unconstitutional, as impairing the obligation of the contract.   Much stress is laid on the fact that the judgment was a *lien* on the property sought to be exempted, and that the creditor had a vested right in it.

[*Indiana.*]   In *Hunt* v. *Gregg.* 8 Blackf. 105, it was held that when a judgment was recovered, and afterwards an appraisement law was enacted, different from the one in force when the judgment was rendered, the sale under execution, issued on such judgment must be governed by the law in force at the time of its rendition.   The court say, "that the law of 1842 was, as far as that judgment was concerned, according to the decision of the Supreme Court of the United States, in *Bronson* v. *Kinzie,* 1 How. 311, unconstitutional and void. That decision, whatever may be our opinion of its correctness, is binding upon us."

[*California.*]   In *Smith* v. *Morse,* 2 Cal. 524, it was held, that an act which divested the lien of the creditor altogether, exempted the judgment debtor's property from execution, placed it in the hands of trustees, with power to sell as they

might think proper, and compelled the creditor to fund his scrip at a less rate of interest, and submit to a delay of twenty years, without any guaranty that he would then receive the principal, impaired the obligation of the contract, and was unconstitutional and void.

In *Thorne* v. *San Francisco*, 4 Cal. 128, which was a case involving the question of the validity of a redemption of property from a sale under execution against the city of San Francisco, under a redemption law enacted after the making of the contracts on which the judgments were recovered, it was held by a majority of the court, that the redemption was invalid. WELLS, J., in his opinion, holds the redemption law unconstitutional as to prior contracts, under the authority of *Bronson* v. *Kinzie*, and *McCracken* v. *Hayward*. MURRAY, C. J., concurred in the decision of the case, on the ground that the law *was not intended to apply* to prior contracts, and that if it were, the redemption was not made by any person entitled to make it. HEYDENFELDT. J., dissented, contending that the opinions on the constitutional question, expressed in the United States Supreme Court Cases, were *obiter* and not well founded; and that the law was intended to be retrospective.

[*Michigan.*] In *Williard* v. *Longstreet*, 2 Doug. (Mich.) 172, (1845) it was conceded by the court, that the Michigan appraisement law, providing that property should not be sold on execution for less than two-thirds of its appraised value, was unconstitutional as to prior contracts, under the decisions of the United States Supreme Court. But in that case, the creditor having participated in the appraisal, and having himself purchased the property for more than two-thirds its appraised value, was held to have acquired a good title.

In *Mundy* v. *Monroe*, 1 Mich. 68, (1848) it was held that a statute taking away the right of the mortgagee to maintain ejectment for the mortgaged premises, before foreclosure, was unconstitutional as to prior mortgages. The court held that by the common law, (which was the law of Michigan, prior to the statute in question,) the legal estate and right of possession was in the mortgagee, and that this being given him by

the terms of the contract, could not be taken away by a subsequent statute. They cite and rely on the cases in the United States Supreme Court, and *Willard* v. *Longstreet, ubi supra.*

[*New York.*] In *Quackenbush* v. *Danks*, 1 Denio 128, the New York Supreme Court held a statute adding to the list of articles exempt from execution, unconstitutional as to prior contracts. The opinion, by BRONSON, C. J. is an able argument in support of the position, that the legislature can not constitutionally exempt from execution, any property of the judgment debtor, greater or less in amount, which was liable to execution by the law in force at the date of the contract. It cites and relies strongly on *Bronson* v. *Kinzie*, and *McCracken* v. *Hayward.*

This case was afterwards affirmed in the court of appeals, 1 Com. 129, by an equally divided court, GARDINER, J. delivering an able dissenting opinion. It was, however, afterwards overruled in the same court, in *Morse* v. *Goold*, 1 Ker. 281, hereinafter stated.

[*Iowa.*] In our own state, several cases have occurred, in which opinions have been expressed as to the constitutionality of the "valuation law" of 1843, which seems in all essential points, similar to the law now under consideration.

In *Shaffer* v. *Bolander*, 4 G. Greene 201, a judgment was rendered in 1845, on a contract made in 1840. It was held that a sale on execution, issued in 1850 was not governed by the valuation law of 1843, because that law was unconstitutional and void as to prior contracts, and because it had been repealed before the execution and sale.

In *Burton* v. *Emerson, Shields & Co.* 4 G. Greene 393, the same thing was held, and the court referred to the cases in the United States Supreme Court, and to *Rue* v. *Wood*, 3 McLean, 575, as establishing the unconstitutionality of the law, as to prior contracts.

In *Coriell* v. *Ham*, 4 G. Greene 455, the *valuation* part of the law is alluded to as unconstitutional as to prior contracts, but it was held that that portion of it, providing that the

sheriff should give a *deed* to the purchaser, instead of a *certificate* (as provided by the former law) was valid as to prior contracts.

In neither of these cases, however, was a decision of the constitutional question directly called for by the facts in the case, in consequence of the repeal of the law before the sales which were in question.

II. CASES FAVORABLE TO THE VALIDITY OF THE LAW.— The cases which are more or less favorable to the constitutionality of the law, are the following:

[*Supreme Court of the United States.*] It seems to be well established, in both the federal and state courts, that the legislature may constitutionally abolish *imprisonment for debt* as well to *prior* contracts, as future ones. Thus, in *Sturges* v. *Crowninshield*, 4 Wheat. 200, 201, MARSHALL, C. J., says: "Confinement of the debtor may be a punishment for not performing his contract, or may be allowed as a means of inducing him to perform it. But the state may refuse to inflict this punishment, or may withhold this means and leave the contract in full force. Imprisonment is not a part of the contract, and simply to release the prisoner does not impair its obligation."

To the same effect is *Mason* v. *Haile*, 12 Wheat. 373, where it was held that under a bond to remain a true prisoner until lawfully discharged, a discharge under a resolve by the legislature, passed in accordance with an ancient usage, thus to relieve from imprisonment, was a *lawful discharge*, and did not impair the obligation of the contract.

The opinion of the court fully recognizes the power of a state legislature to abolish imprisonment for debt, as to prior contracts. To the same effect are:—

[*U. S. Circuit Court.*] *Gray et al.* v. *Munroe*, 1 McLean 528, decided in 1839.

[*Tennessee.*] *Woodfin* v. *Hooper*, 4 Humph. 13, decided in 1843.

[*Indiana,*] *Fisher* v. *Lackey*, 6 Blackf. 373, decided in 1843.

[*Maine.*]   *Oriental Bank* v. *Freeze,* 6 Shep. 109, decided in 1841.

In *Fisher* v. *Lackey,* the court say : " Imprisonment of the debtor, as a means of enforcing the payment of a debt, belongs exclusively to the law of the remedy, and may be granted or withheld at the option of the legislature, without affecting the obligation of the contract."

In *Oriental Bank* v. *Freeze,* it is said : "The legislature must necessarily possess the power to determine by law, in what manner the person or property of the debtor shall be subjected to the demands of a creditor ; and of making alterations in such laws, as a change of circumstances, or the public good may require, and in doing this, one may be deprived of a right which he has by existing laws, to arrest the body, or to attach, or seize a certain description of property without infringing any constitutional provisions."

[*Maine.*]   In *Read* v. *Frankfort Bank,* 10 Shepley 318, (decided in 1843,) TENNEY, J., says : "A remedy for a party may be changed, or wholly taken away by the legislature, without contravening the constitution of the United States."

[*Mississippi.*]   In *Woods* v. *Buie,* 5 How. Miss. R. 285, it was held (in 1840,) that an act providing that actions should not be triable at the return term, was constitutional as to past contracts.

[*Pennsylvania.*]   In *Evans* v. *Montgomery,* 4 Watts & Serg. 218, (decided in 1842,) it was held that a statute modifying the remedy for enforcing mechanics' liens, and providing that no greater estate should be acquired by a purchaser at a sale under such lien, than was held by the person in possession when the building was erected, (whereas by the former law, the lien extended to the fee-simple,) was constitutional as to future proceedings to enforce prior liens ; and it was said that the legislature may pass laws, altering, modifying, or even taking away remedies for the recovery of debts, without violating the constitution.

All the foregoing cases, however, were decided *before* the

decisions of the United States Supreme Court, in *McCracken* v. *Hayward*, (which was at January term, 1844) and either before, or about the same time with *Bronson* v. *Kinzie*, (which was decided in 1843) and probably before that decision was generally known. And if the *decisions themselves* do not necessarily conflict with those in the two last named cases, the *broad* and *general* propositions laid down in the *opinions*, (some of which are quoted above) can hardly be reconciled with the decision in *McCracken* v. *Hayward, much less* with the *principles* laid down by BALDWIN, J., in his opinion in that case.

We come now finally, to the cases *favorable* to the validity of the law, and decided *since* the cases in the United States Supreme Court.

[*Michigan.*] In *Bronson* v. *Newberry*, 2 Doug. (Mich.) 38, (in 1845) it was held, that the law abolishing imprisonment for debt, was constitutional as to previous contracts. And in *Rockwell* v. *Hubbell*, 2 Doug. 197, (1845) the same was held as to a law exempting certain articles from execution.

In these cases, *Bronson* v. *Kinzie* and *McCracken* v. *Hayward* are commented on by the court; and while it is admitted that the *language of the opinion* in the latter case, is sufficiently comprehensive to embrace the cases before the court, it is held that the *decisions themselves* did not reach them ; and the court expressed an unwillingness to carry the doctrine further than it had been done in the United States Court.

[*Arkansas.*] In *Newton* v. *Tibbatts*, 2 Eng. 150, (in 1846) a law abolishing imprisonment for debt was held constitutional as to prior contracts.

[*New York.*] In *Morse* v. *Goold*, 1 Kernan 281, in 1854, it was held (overruling *Quackenbush* v. *Danks*, 1 Denio 128, and 1 Coms. 129) that an act exempting certain articles from execution, in addition to those exempt by the previous law, was valid as to prior contracts. The opinion of the court (an exceedingly able one) is delivered by DENIO, J., who

lays down the proposition, that "the contracting of a debt does not in any legal sense, create a *lien* upon the debtor's property. He is as much at liberty to deal with it, and to transfer it *bona fide,* as though he were entirely free from debt. The right which a creditor, by becoming such, acquires is, to have the use and benefit of the laws for the collection of debts, *which may be in force when he shall have occasion to resort to them to enforce his demand against the debtor."* This is qualified by the admission that "a contract may be virtually impaired by a law, which, without acting directly upon its terms, *destroys* the remedy, or so embarrasses it that the rights of the creditors, under the legal remedies existing when the contract was made, are *substantially defeated.* With this necessary qualification, the jurisdiction of the states over the legal proceedings of their courts is supreme." It is further laid down that "every alteration in the course of legal proceedings, affects to a greater or less extent, the efficacy of the machinery for the collection of debts. The creditor's action for an existing debt may be rendered more or less speedy, stringent and effective, without raising any question under this provision of the constitution." Various instances illustrative of this are referred to, as laws abolishing imprisonment for debt, statutes of limitations, and a law of New York abolishing the remedy of distress for rent, and the case of *Stocking* v. *Hunt,* 3 Denio 274 is cited, in which it was held that the last mentioned law *was constitutional* as to pre-existing leases. The case of *Bigelow* v. *Pritchard,* 21 Pick. 169, is also referred to, in which it was held that a provision of the Massachusetts insolvent law, which vested in the assignee the title to all the insolvent's property, *including any which might have been attached on mesne process,* and so operated to dissolve the attachment and deprive an attaching creditor of his priority, was constitutional as to prior contracts.

The cases of *Bronson* v. *Kinzie,* and *McCracken* v. *Hayward,* are commented on at length, and the *decisions* in these cases *fully approved,* but held not to apply to the case then

before the court. With reference to them it is said, "I do not understand either of the cases to determine that the law respecting legal procedure in existence when the contract was made, can not be changed in such manner as to operate in existing contracts. In the able and discriminating opinion of Chief Justice TANEY, in the first case, the right to make such changes is distinctly asserted; and if the opinion in *McCracken* v. *Hayward* holds the contrary, it was unnecessary to go that length, and the doctrine would be hostile to the principle of several prior cases, and an unwarrantable restriction upon the powers of the state government."

In this case the *approval* of Judge DENIO, of the cases of *Bronson* v. *Kinzie*, and *McCracken* v. *Hayward*, so far as they decide the Illinois appraisement law invalid as to prior contracts, is put on the ground that "the statute did not profess to be a part of the *ordinary and regular* system for the collection of debts, but was special and exceptional in its character, and was evidently passed to meet a *particular emergency*, namely, to *afford relief against a mass of indebtedness which the peculiar circumstances of some preceding years had led the citizens to contract.* This is obvious from the fact that its operation *is limited to existing contracts*, and to such as might be entered into, prior to the first day of May then next, which was about two months after the passing of the act. It can not be pronounced that the legislature of Illinois considered the provisions of this act as affording an adequate and sufficient or reasonable remedy for the collection of debts in ordinary cases; *but the contrary is to be inferred from their declining to apply them generally to all future cases.* Again, the act forbade the sale of the debtor's property, altogether, unless there should be offered for it an amount equal to two-thirds of a valuation, to be put upon it by three persons, one of whom was to be selected by the debtor. This was interpolating a new feature into the law and practice of judicial sales, and one which would be quite likely in many if not in most cases, to render the remedy entirely nugatory. I should have found no difficulty

Rosier v. Hale, et al.

in saying, that no reasonably substantial remedy was left to the creditor under this act; but it would have been sufficient in determining against the constitutionality of the law, to refer to the fact, that all existing contracts, and such as should immediately be made, were by it taken out of the ordinary and regular system of legal remedies, and subjected to new and exceptional rules, of an anomalous character, which were calculated to embarrass, and which might in many cases, wholly defeat the creditor's remedy."

In *Conkey* v. *Hart*, 4 Kernan 22, (in 1856,) it was held (ten judges *dissenting*) that the law abolishing distress for rent, was valid as to a prior lease, which contained an *express stipulation* that the lessor should be entitled to distrain for rent in arrear. The decision is put on the ground, that had the lease contained no such stipulation, the act would clearly have been constitutional as to such lease, as merely abolishing an extraordinary remedy given to the landlord, and putting him on the same footing with other creditors; and that the *continuance* of a *particular legal remedy*, is a thing which parties can not contract for, so as to prevent the legislature from repealing it.

[*Texas.*] In *Catlin* v. *Munger*, 1 Texas 598, (in 1846,) a law providing for an appraisement of property on execution and prohibiting a sale for less than two-thirds its appraised value, was held constitutional as to prior contracts, under the constitution of the *Republic of Texas*, (which, it seems, like that of the United States, prohibited laws impairing the obligation of contracts,) the law having been passed *before the admission of Texas into the Union*, and hence not being obnoxious to the constitution of the United States. The court express disapprobation of the cases in the Supreme Court of the United States, on the Illinois laws, and (the case not being subject to review in that court) decline to follow them.

[*Alabama.*] In *Iverson* v. *Shorter*, 9 Ala. 713, (in 1846,) it was held that a statute giving a right of redemption for

VOL. X.        31

two years from sales on execution, under mortgages, deeds of trust, or decrees in equity, was constitutional as to prior contracts, *at least so far as it governed sales on execution.* The court say: "Conceding that a judgment creditor, at the time of this enactment, had by his active diligence acquired a lien on the real estate of his debtor; this may be said to be entirely without his contract, and is in no manner affected by it. The legislature, as it seems to us, may modify, or even abolish all such laws, without in any manner impairing the obligation of the contract. The answer to the entire argument is, that the creditor has stipulated for no specific lien, and the only right under his contract is, to have the same remedies as all other creditors are entitled to, by the general laws of the land. It might be contended, with equal force, that imprisonment for debt was contracted for, when the engagements were entered into some years ago, as that the right to sell the land of the debtor was now a part of the contract. The case of *Bronson* v. *Kinzie*, 1 How. 311, goes to show that a creditor who has contracted for a specific lien upon his debtor's lands, can not be deprived of that right by any subsequent legislation; but certainly stops far short of the decree in this suit."

In the foregoing case, the decision of *McCracken* v. *Hayward*, is not referred to. The reasoning of the court, if not the decision, would seem to be in direct conflict with that case.

[*Pennsylvania.*] In *Chadwick* v. *Moore*, 8 Watts & Serg. 49, (in 1844,) it was held that a statute of Pennsylvania, providing for the appraisement of property levied on under execution, and prohibiting its sale for less than two-thirds the appraised value, *except after the expiration of a year*, was held constitutional as to prior contracts. Chief Justice GIBSON delivered the opinion, and acknowledging the binding authority of *Bronson* v. *Kinzie*, and *McCracken* v. *Hayward*, distinguishes the case before the court from those cases, on the ground that the Illinois statute *prohibited perpetually* a sale for less than two-thirds the appraised value,

while the Pennsylvania statute only *suspended it for a year.* It treats the statute as *substantially a law staying execution for a year*, and says that such stay-laws have been enacted in many of the states, and no decision against their validity has been made in the court of last resort; and that the courts regard them as within the power of the state legislatures to enact.

He adds: "Yet the case is by no means a clear one, and and as the decision of it involves the validity of other acts of the same stamp, it is worthy of being before the Supreme Court of the nation."

Lowe, C. J.—On the 16th of April last, after the late appraisement law had taken effect by publication, the sheriff of Fayette county, by virtue of an execution issued upon a judgment rendered in this court at its last December term, sold to the plaintiff as the highest bidder, two forty acre lots of land, according to his return, for the sum of twenty-five dollars.

The levy and sale under this execution we are now asked to set aside, because the sheriff in conducting the same disregarded the provisions of the act entitled, "an Act to provide for the appraisement of property sold under execution," approved March 31st, 1860. This motion is based upon the idea, that the act in question was intended to apply to past transactions and liabilities. Although retrospective acts are often passed and sustained as valid, yet they are viewed with disfavor and will not be construed by the court to be such, except from a necessary and unavoidable implication, or they are made so by the express terms of the law itself. In this case the language of the act does not except executions founded upon antecedent debts and judgments. It is general, and in its terms applies to all future levies and sales under executions, without regard to the time when the debt may have been contracted, or the judgment rendered; which, taken in connection with the last clause of the law repealing all other acts and parts of acts inconsistent with its pro-

Rosier v. Hale, et al,

visions, leaves us no room to doubt that the legislature intended to give it the effect and operation of a retrospective law. In doing so the members of that body either overlooked the true nature and sense of the word "obligation," when applied to contracts, as now fully settled by the courts of the country, and which the constitution both federal and State, declare shall not be impaired by the passage of any law whatever; or, they intended in view of what they supposed to be a controlling public necessity, to pass a law that should, in their judgment, meet the exigencies of the times, and leave its validity in the keeping of the courts, to whose domain has been assigned under our form of government, the right not only to construe and administer the law, but the power of applying constitutional restrictions. This important duty was performed once before by this court, with reference to the constitutionality of the appraisement law of 1843, as a retrospective act; and therefore we might have been spared the responsibility of exercising so delicate a power the second time. Still we are not insensible of the pressure of circumstances that gave rise to this enactment, and appreciate not only the good intentions of the legislature but the known anxiety that is felt, that the law should be permitted to have a retrospective operation. We can not sustain this motion for the reasons assigned, without disregarding a constitutional inhibition and holding adversely to the repeated decisions of the Supreme Court of the United States, whose authority upon questions arising under the federal constitution is as binding upon this court as our decisions are upon the inferior tribunals of the State, on questions arising under the local laws. To construe this law, therefore, as applying to past contracts could be of no practical benefit to the citizen, inasmuch as there is another tribunal above us, of the last resort, whose prerogative it would be to review and overturn our decision; and to declare invalid a statute that transcended in its provisions the true limits of the law making power. The leading cases in the federal courts which have held that an appraisement law similar to the one under consideration,

could not constitutionally apply to prior contracts, are *Bron-son* v. *Kinzie*, 1 How. 311; *McCracken* v. *Hayward*, 2 Ib. 608; *Gantley's Lessee* v. *Ewing*, 3 Ib. 717. These authorities define to some extent, but not with entire precision, the distinction between a contract and the obligation of a contract, and they settle the principle that a State legislature can not pass a law that shall act upon the one or the other; that is, vary or charge the terms of a contract, or impair its obligation, referring thereby to the remedy appointed in the law for enforcing through certain prescribed forms the performance of the same, making the word "obligation" mean, not the promise, not the moral duty or honor that binds the contracting party to keep his engagement, but the remedial process or coercive means which may be employed to compel the defaulting party to perform his agreement. It is by overlooking this distinction between the law of the contract and the law of procedure, which gives to contracts their binding force or efficiency, that the legislatures of this country are often betrayed into the enactment of laws striking at the remedy in a manner that threatens the inviolability of the obligations of contracts; and have thereby compelled the courts to interpose their authority, and to limit their operation to cases *in futuro*.

The doctrine laid down in the above cases is, that the law in force when the contract is made is necessarily referred to and forms a part of the contract, and fixes the rights and obligations growing out of it; and that any substantial change in the law of the remedy which shall lessen its efficiency, or burden it with new conditions and restrictions, comes within the constitutional prohibition. They say in effect that an appraisement law which prohibits a sale on final process, unless the property will bring two-thirds of its appraised value, is such a material change in the terms of an execution law authorizing an unconditional sale, that it can not be upheld retrospectively. The States of New York, Pennsylvania, Indiana, Michigan, Kentucky, Georgia, Missouri and California, have directly

acquiesced in this interpretation of the constitution; other States again have incidentally approved the principle involved in these decisions, and not one has ventured to make a different ruling except the State of Texas, where the appraisement law was passed whilst that state was yet an independent republic, and before her admission into the Union; and, therefore, her law was not within the prohibition. Whilst, however, this general concurrence exists between the federal and state courts, in regard to the invalidity of the appraisement law as a retrospective act, yet they all assent to the doctrine that the remedy, in some respects, may be altered and modified to a greater or less degree, without impairing the obligation of contracts; but they do not agree in fixing any practical line of demarcation between a new remedy that does, and one that does not affect the contract. Indeed much learned and varied discussion has arisen as to the extent the legislature may alter the remedy, without interfering with the constitutional rights of the parties, but it has not resulted in establishing any general rule on the subject. Some give the word, *impaired*, a very broad signification and make it apply to the taking away a part of the remedy, and insist that to lessen to any extent the remedy in existence when the contract was made, impairs both its value and obligation. Sedgwick in his late work upon "Statutory and Constitutional Law," thinks it exceedingly difficult to distinguish between the obligation of a contract and a remedy given by law to enforce it; that they are convertible terms and essential to each other, and that one can not be impaired without producing the same consequences to the other. On the other hand, some of the State courts have gone to the other extreme in sustaining statutes changing the remedy. As an illustration take the following cases: In *Morse* v. *Goold*, 1 Ker. 281; it was held (overruling *Quackenbush* v. *Danks*, 1 Denio 128, and 1 Cow. 129,) that an act exempting certain articles from execution in addition to those exempted by a previous law, was valid as to prior contracts. Again, in the case of *Chadwick* v. *Moore*, 8

Rosier v. Hale, et al.

Watts & Serg. 49; it was held that statutes suspending sales on execution for a year, unless two-thirds of the appraised value was realized, were within the power of the legislature to enact as applicable to antecedent debts.    In *Iverson* v. *Shorter*, 9 Ala. 713; it was held that a statute giving a right of redemption for two years from sales on execution under mortgages, deeds of trust, or decrees in equity, was constitutional .as to prior ·contracts, at least so far as it governs sales on execution.   It is difficult to perceive why these last two cases are not in conflict with the principle laid down in the federal cases above referred to, yet the courts making these decisions claim that there was a distinction between them.   We could refer to other decisions upon stay and insolvent laws, showing the diversity of opinion that exists in regard to the character of such laws, and that the courts have not in fact, either from the want of ability, or inclination, established any uniform or general rule which would show how far the legislature might change the law of procedure without interfering with the obligation of contracts. Chancellor KENT deplored the looseness and uncertainty of their adjudications on this subject, and undertook himself to supply a rule, which, perhaps, will be found to be as practical and sound as the nature of the question will admit of; and that is that the constitution shall not be deemed violated so long as the contracts are submitted to the ordinary and regular course of justice, and the existing remedies are preserved in substance.

The constitution of New Jersey declares "that the legislature shall not deprive a party of any remedy for enforcing a contract which existed when the contract was made."   This is equivalent to declaring that no remedial law shall be retrospective in its operation, and if the federal constitution had contained a similar provision instead of the one it does, it would have saved a vast amount of astute discussion, and at the same time given equal, if not greater security to the sanctity and efficacy of contracts.

In view of the very great change which has recently

been made in our own law of procedure, and not know-ing what other questions growing out of the same, may be brought before us, we are admonished not to over-look the wisdom of the rule that the decision of every court should be limited to the very matter before it, and therefore, we will not now express any opinion upon the different phases of this subject, as it has been brought before the courts of the country; and we desire to be understood as simply overruling this motion upon the ground that the ap-praisement law in question can not constutionally apply to prior contracts.