## SMITH & BRO. v. VAN GILDER, ADM'R.

COMMISSIONERS OF OTHER STATES.—Commissioners, appointed by the Governor for other States, under chapter 32, Gould's Digest, are officers of this State, and affidavits taken and certified by them, properly authenticated under the seal of their office, are to receive full faith and credit. Section 109, chapter 4, Gould's Digest, respecting the authentication of claims against the estates of deceased persons, was intended to apply to affidavits made before officers of other States, and not to commissioners of this State, appointed, and residing in other States.

AUTHENTICATION OF CLAIMS.—An affidavit, in the usual statutory form, to a note given by a firm, to the effect that nothing has been paid upon it, though not alleging that the amount was due from the estate of a deceased member of the firm, is a sufficient legal authentication as against the estate of the deceased member.

PROBATE COURT—Appeals from, to be tried de novo.—The practice, on appeals from the decisions of the probate courts, has been changed by the Civil Code of Practice. Under the Code, all cases appealed from the probate to the circuit courts are to be tried anew, as if no judgment had been rendered.

CODE OF PRACTICE—to govern.—When the case was tried in the probate court before, and in the circuit court after the Code of Practice went into full operation, the court should be governed in the determination of the case by the Code of Practice.

RETROSPECTIVE ACTS—when void.—Legislative acts, retrospective in their character, are not void, unless they conflict with some constitutional provision or interfere in some respect with vested rights.

*Appeal from Ashley Circuit Court.*

HON. HENRY B. MORSE, Circuit Judge.

*Watkins & Rose,* for appellants.

That the affidavit was properly authenticated and sufficient. *See Kauman v. Stone, 25 Ark.*

We submit that there should have been a trial *de novo* in the circuit court. *See sec. 30 of the Code; also sec. 830,* which provides, that on appeals from *probate courts (see sec. 806,)* the action shall be *tried anew."* See also *Gould's Dig., p. 138, sec. 201; Grimes v. Bush, 16 Ark , 649.*

*J. W. Van Gilder*, for appellee.

The affidavit is fatally defective, in that it does not authenticate the claim *against the estate of the deceased.*

The note was signed "E B. Kittrell & Co." The affidavit is to the effect "that nothing had been paid or delivered toward the satisfaction of the above demand, and that the sum above demanded is justly due."

This certainly can not be considered as authenticating a claim against the estate of D. L. Evans. It could just as well have been presented for allowance to the administrator of any other estate within the State of Arkansas. And by section 103, of chapter 4, of the Digest, the administrator is prohibited from paying or *allowing* any debt demanded as due from the deceased without it is properly authenticated. It is true the affidavit is partly in the general form presented by section 102. But that is only intended as a general form, and the affidavit must vary to suit the circumstances of each case. *Beirne & Burnside v. Imboden, 14 Ark., 244; 16 Ark., 82.*

The claim must be authenticated *against the estate of the deceased. Chapter 4, sections 99, 102, 103, 107 and 108.* And not a general authentication that would apply to any estate. *7 Ark., 78; 14 Ark., 237; 14 Ark., 246; 21 Ark., 519.*

SEARLE, J.

This suit was brought, by the appellants, who were plaintiffs below, against W. E. Kittrell, as administrator of the estate of D. L. Evans deceased. Kittrell, during the progress of the suit, resigned as such administrator, and J. W. Van Gilder was appointed in his place. The action was commenced by filing, in the probate court, the note sued on, signed by B. F. Kittrell & Co., to which was attached an affidavit, taken before a commissioner of deeds for the State of Arkansas, residing in the State of Louisiana, to the effect, "that nothing had been paid or allowed toward the above demand, and that the sum above demanded is justly due." Before filing in the office of

the clerk, the note had been presented to the administrator, who disallowed it, waiving copy and service.

On the trial in the probate court the defendant objected to the introduction of the note as evidence, because the claim was not authenticated as required by law, which objection was sustained by the court. The plaintiffs also offered to read depositions to prove that D. S. Evans, defendant intestate, was a member of the firm of E. B. Kittrell & Co, which was also objected to, and the objection sustained by the court. Judgment was rendered against the plaintiffs, and they appealed to the circuit court. The plaintiffs asked in that court a trial *de novo*, which was refused, to which refusal they excepted. The court upon the examination of the record and bill of exceptions found no error, and affirmed the judgment of the probate court, from which plaintiffs appealed to this court.

These questions are presented for our consideration in this case:

*First,* Was the affidavit appended to the note properly taken, and legally sufficient?

*Second,* Did the circuit court err in sustaining the ruling of the probate court, in excluding the evidence, which the plaintiffs offered, to prove that D. S. Evans was a member of the firm of Kittrell & Co., when the note was executed by the firm?

*Third,* Did the court err in refusing to try the case *de novo?*

*Fourth,* As to whether the affidavit was properly authenticated, and its legal sufficiency?

It is contended that the affidavit was not properly authenticated, because there was no certificate of a clerk of some court of record, under his official seal, superadded, bearing testimony to the official character of the commissioner, in accordance with section 109, chapter 4, Gould's Digest. This objection is not tenable, because the statute, authorizing the appointment of commissioners (chapter 32, Gould's Digest,) and prescribing their duties and powers, provides, among other things, that all affidavits taken and certified by them, "shall be as effectual, in

34

law, to all intents and purposes, as if done and certified by a justice of the peace or other authorized officer within this State." And it is provided by the statute of depositions (sec. 16, chap. 55, Gould's Digest,) that no authentication of the official character of any judge, justice of the peace, or other judicial officer, shall be necessary, when a deposition shall be taken before any such officer within the State. And this rule, we presume, applies equally to all oaths administered and affidavits taken, as to depositions, and for the same reason. By the same section last above mentioned, depositions, taken out of the State, by judges and justices of the peace, shall be authenticated by a certificate of a clerk of some court of record under his official seal. These general rules, as laid down by the statutes, are founded in the most substantial reasons. The design of the law is simply to afford evidence of the proper making and subscribing of oaths and affidavits. And when the authentication, which is such evidence, fulfills this design, this should be sufficient for the courts. Courts cannot take judicial notice *immediately* of the official character of officers of other States. Such notice must necessarily be *mediate*, that is, through and by the solemn sanction and attestation of a public seal. But it is entirely otherwise as to officers of our own State. Such the courts are bound to take judicial notice of, immediately, and any mediate authentication, as by a clerk under the seal of his office, would be quite superfluous. Likewise, they must take judicial notice of their acts, when performed within the scope of their duties, and in a legal manner. These general rules, of the statutes, apply equally to commissioners residing abroad. They are nothing more nor less than officers of this State. Like judges and justices of the peace at home, they are appointed by authority of this State. They take and subscribe an oath of office, which, together with their signature, and the impression of the seal of their office, is filed in the office of secretary of State, of this State. The courts of this State are bound to take judicial notice of their official character and their acts, required of them by the laws

of this State, properly authenticated under the seal of this office, are to receive full faith and credit.   The acts therefore of such functionaries, notwithstanding they reside beyond the State, are thus placed upon a par, as to their authenticity, with similar acts performed by officers of this State, residing within her limits.   And such has clearly been the ruling of this court heretofore, as declared in *Johnson v. Cook, use etc., 12 Ark. 680*; *Stone, ad'mr. v. Kaufman & Co., 25 Ark. 188; Kaufman & Co., v. Stone, ad'mr. 25 Ark. 342.*   In the latter case, this court said: " the record of the appointment of Graham (who was commissioner in the State of Louisiana,) by the Governor, is a matter of which the courts of this State must take judicial notice.   The certificate and official seal of the commissioner, was all the evidence of official character that parties litigant were bound to furnish."   Section 109, above referred to, relating to the authentication of claims against the estates of deceased persons, and upon which the defendant seems so much to rely, provides that, "an affidavit taken out of the State, if the official character of the person taking it shall appear from the certificate of a clerk of any court of record under his official seal, shall be received."   This, doubtless, relates to officers of other States and not to commissioners appointed by authority of this State, for the latter, as we have seen, are virtually officers of this State; and we are helped to this conclusion by this same section, when it declares that, "any judge, justice of the peace or notary public of this State, have power to take the affidavit required by this act to authenticate any claim against the estate of a deceased person."   As we have seen, commissioners, in this State, stand in the same relation, in this matter, as do those officers.   It is further contended that the affidavit is legally insufficient, because it does not authenticate the claim expressly against Evans or his estate.   The note was executed by Kittrell & Co.   The affidavit was to the effect that nothing had been paid upon it.   It was in the usual statutory form, but did not allege the amount was due from Evans' estate.   Is this an authentication as against the estate of

Evans? Kittrell & Co., were liable upon the note. If Evans belonged to the firm, he was liable, and at his death, his estate became liable. But the plaintiffs allege that he was a member of the firm, and they presented their claim, before bringing their action, to the administrator, and he disallowed it. It really seems to us that the authentication was legally sufficient, when we consider the presentation and demand, the allegation that the deceased was a member of the firm, and the offer of plaintiffs to prove it. For, if the authentication had expressly indicated that the debt was due from Evans, or from his estate, there would have been the same necessity on the part of the plaintiffs to prove that Evans belonged to the firm of Kittrell & Co., as there is in its present form. Nor can we see that the authentication so made, would fix the indebtedness with more certainty than it does, or place the administrator in a better condition to resist the claim if unjust.

The second question is, did the probate court err in refusing to permit the plaintiffs to prove that the deceased was a member of the firm, when the note was executed? This question is virtually answered by our observations upon the legal suffi- ciency of the affidavit. For certainly, if the affidavit was sufficient, the plaintiffs had a right to prove their allegation, that Evans was a member of the firm, in order to fix his lia- bility upon the note.

The third question is, as to whether the circuit court erred in refusing to try the case *de novo?* This might be considered as being answered by what we have already said. For if the probate court erred as to matters of law and fact, it was the duty of the circuit court to try the case *de novo.* But we are disposed to consider this question further, upon general princi- ples, relating to practice. Under the old system of practice, before the Code of Practice went into operation, it was incum- bent upon the circuit court, when it was of opinion that the probate court erred in relation to any material matter of law or fact, to try the matter *de novo. Sec. 210, chap. 4, Gould's Digest; Grimes ad'mr v. Bush. 16 Ark, 649.* When the circuit

court discovered no error, it simply affirmed the judgment. When the decision of the probate court involved merely a question of law and its judgment was reversed, the circuit court remanded the cause to the probate court, that a trial might be there had upon the merits. *Dempsy v. Fenno, 16 Ark. 491.* But the practice, in these matters, has been very much changed by the Civil Code of Practice. It appears from sections 19 and 20, of the Code, that the appellate jurisdiction, of the circuit courts, shall extend to errors of facts, as well as errors of law, in the orders and judgments of probate and certain other courts.

It is further provided, in section 830, that appeals shall be docketed and stand for trial, as actions by proceedings at law, and that the actions shall be tried anew, as if no judgment had been rendered. And, by sections 796 and 806, it would seem that the provisions of section 830 are applicable to circuit courts, upon appeals from probate courts, as well as from all other courts, inferior to circuit courts. There can be no doubt, we think, that all cases, by appeal from probate to circuit courts, are to be tried anew, as if no judgment had been rendered. The case before us was determined in the circuit court since the Code went fully into operation. But we are unable to determine whether it was tried in the probate court before, or since, as the date upon the transcript is left blank ; if since, there could be no doubt that the circuit court committed an error in not trying the case anew, whatever may have been its opinions as to errors in the trials by the probate court. But presuming that the case was tried in the probate court before the Code went into operation, by which practice, the old or the new, should the circuit court have been governed in the determination of the case ? We think that this question is directly and fully answered by section 1, Act 83, of the Acts of 1869, where it is declared that, "after the first of June," when the Code went fully into operation, "the Code of Practice *shall* regulate the practice and *all proceedings* in the courts of this State, as therein provided." This is certainly as binding upon

circuit courts as language could make it. It is true, in this case, the Act makes the Code of Practice retroactive, and it may be contended that the appellee is prejudiced in his rights by having his case determined under a different law of procedure than that under which the suit was instituted. -But this position is untenable, for it is well settled, as a *general rule*, that a right to a particular remedy is a part of the right itself. But this case cannot be brought within the exceptions. Legislative Acts, which are retrospective in their character, are not void, unless they conflict with some constitutional provision, or interfere in some respect with vested rights. See *Smith et al v. Bryan, 34 Ill's. 377. Rosier v. Hale, et al 10 Iowa 486. Halloway v. Sherman, 12 Iowa, 283. McCormick v. Rusch, 15 Iowa 131. Rockwell v. Hubbells, adm'r. 2 Douglass, (Mich.) 200. Lord v. Chadbourne, 42 Maine, 441.*

The Act, above referred to, is not in conflict with any constitutional provision, nor does it interfere in any respect with vested rights. It therefore ought to be obeyed. It is mandatory, and therefore must be obeyed.

We are of opinion, therefore, that the circuit court erred in not trying the case anew. For this and other errors, the judgment is reversed, and the cause remanded, with instructions to the court below, to try it anew upon its merits.