OLMSTEAD ET AL. v. KELLOGG ET AL.

1. **Judicial Sale:** APPRAISEMENT: COULD NOT APPLY TO EXISTING CONTRACTS. Contracts made prior to the taking effect of the appraisement law of 1860 were not affected thereby, even though enforced after the law took effect. Such a law imposes a new condition, rendering the debt more difficult of collection, and to apply it to an existing contract would impair the obligation thereof.

2. ——: REDEMPTION. The fact that a deed was given immediately after the sale, instead of a certificate of sale, was a mere irregularity which did not deprive the judgment debtor of the right to redeem, and did not invalidate the sale.

3. ——: ——: SALE EN MASSE. The fact that separate parcels of land embraced in an execution were not sold separately, was a mere irregularity which in the absence of fraud did not affect the title of the purchaser.

*Appeal from Harrison Circuit Court.*

THURSDAY, DECEMBER 13.

ON the 2d day of October, 1858, one Henry Olmstead borrowed from Harrison county the sum of $2,000, of the swamp

land fund belonging to said county. He gave his promissory notes for said loan, and to secure the payment thereof he made and delivered to said county a mortgage upon certain lands then owned by him. In October, 1861, said Olmstead died intestate. After his death an action for the foreclosure of said mortgage was commenced against his heirs, and the administrator of his estate; and in October, 1863, a decree of foreclosure was entered, and a special execution was awarded against said lands, to satisfy the amount due on the mortgage, to-wit: $2664.34. Said lands were sold by the sheriff on the 24th day of December, 1863, for an amount sufficient to satisfy the execution and costs.

This action was commenced in March, 1876, by the heirs of said Olmstead, against the purchasers at the sheriff's sale, and subsequent purchasers of the land, to set aside the sale, and the deeds made in pursuance thereof. It is charged in the petition " that the lands were sold without appraisement, and a sheriff's deed executed forthwith, depriving plaintiffs of their equity of redemption; that the sale was in advance of the hour designated, and thereby many persons were prevented from bidding, and that it was what is known as a lumping sale." It is further charged that the defendants purchasing at said sale fraudulently combined and colluded together for the purpose of avoiding competition, and that by thus confederating they were enabled to obtain said lands for a grossly inadequate consideration.

Issue having been taken upon the petition the cause was tried to the court upon depositions and record evidence. A decree was entered dismissing the petition. Plaintiffs appeal.

*Clinton, Hart & Brewer* and *Tubbs & Bangs*, for appellants.

*Sapp & Lyman* and *Frank Giffin*, for appellees.

ROTHROCK, J.—I. The burden of proof was upon the plaintiffs to establish the alleged fraudulent combination of the bidders at the sale. A careful examination of the abstracts prepared by the parties has led us to the conclusion that in

this the plaintiffs have failed. It is true there is some evidence tending to show that on the evening before the sale there was a meeting of the defendants, who became purchasers of the land, at the office of the county treasurer, and a witness testifies that the sheriff said: "They are fixing up that Olmstead land that is to be sold to-morrow." The sheriff is not charged with being a party to any conspiracy, and his admission or declaration was not competent evidence. This witness testified to no other fact from which it could be inferred what the defendants were doing in the treasurer's office. Another witness testifies that he saw the same parties in the treasurer's office, that they were talking about the land, and some one said Mrs. Olmstead wanted a certain forty, and there was no objection to her having it; that he thought there was a county plat there, and that they might have looked at it, to see what forty it was; and that he did not know that there was any other conversation at that time.

Another witness testified that he saw the defendants, about half an hour before the sale, in the treasurer's office looking over a plat of some land, and heard them discussing as to which land they would have, and that the general talk was that Lorenzo Kellogg was to bid off all of the land.

Upon the other hand, the five defendants who are charged with the fraudulent combination testified positively that there was no arrangement or agreement made between the purchasers at said sale to prevent competition, and that no understanding was had between them as to what particular part of the lands to be sold any particular person was to get, or that they did anything to prevent others from attending and bidding at the sale.

II. The mortgage was executed in 1858, and the foreclosure and sale occurred in 1863. The plaintiffs claim that the land should have been appraised according to law. By the law in force in 1858, the sale was required to be made without appraisement, and with the right of redemption within one year from the sale. The appraisement law of 1860 was in force when the decree of foreclosure was entered and the sale made.

1. JUDICIAL sale: appraisement: could not apply to existing contracts.

In the case of *Rosier v. Hale et al.*, 10 Iowa, 470, it was held that the appraisement law of 1860 could not be applied to contracts entered into prior to the date of its taking effect. The reason of the rule there announced is that an appraisement law which prohibits a sale on final process, unless the property will bring two-thirds of its appraised value, is such a material change in the terms of an execution law authorizing an unconditional sale, that it impairs the obligation of the contract by burdening it with new conditions and restrictions.

The law as settled in that case was followed, and sales throughout the state were conducted in accord therewith, as long as the appraisement law remained in force.

By sections 3100 and 3102 of the Code no appraisement of real property is required, and the defendant in execution has the right to redeem from the sale within one year, excepting in cases in which he has taken an appeal, or stayed execution on the judgment.

It was held in *Holland v. Dickerson*, 41 Iowa, 367, that sections 3100 and 3102 of the Code applied to contracts existing at the time of the taking effect of the Code, because a change from an appraisement law to one authorizing a sale without appraisement did not weaken, lessen or impair the obligation of existing contracts. This case was followed in *Babcock v. Gurney*, 42 Iowa, 154, and in *Fonda v. Clark*, 43 Id., 300.

There is a broad distinction between the case of *Rosier v. Hale, supra*, and the cases last above cited, which will readily be seen. An appraisement law which requires real estate to be sold at two-thirds its value imposes a new condition, rendering the debt more difficult of collection, and thus impairing the obligation of the contract, while a change from an appraisement law to one authorizing a sale without appraisement does not have that effect.

We conclude, therefore, that the real estate in controversy in the case at bar was properly sold without appraisement.

III. It is next urged that deeds were made to the purchasers of the land immediately after the sale, and that they were 2. ——: redemption. not entitled to deeds, but to certificates of sale. This was but a mere irregularity, and in no way

prejudiced the plaintiffs, or prevented them from redeeming the lands from the sale. It does not appear that they offered or attempted to redeem at any time. Their right to redeem was fixed by law, and not by the character of the written instrument delivered by the sheriff to the defendants.

IV. A large amount of evidence was taken as to the actual value of the land at the time of the sale. As the plaintiffs had the right of redemption, and as we have found there was no fraud in the sale, inadequacy of consideration is not a material question, and cannot be made the basis of an action to set aside the sale and deeds after the lapse of so many years. Aside from this, it appears that owing to the financial condition of the country at the time of the sale there was practically no market for lands. The estimate of value by the witnesses ranges from $1.25 to $10 per acre, and in a proper case made we do not think that the amounts bid by the purchasers would be regarded as grossly inadequate. The lands were sold at about $1.80 per acre.

V. It is claimed that the land was not offered, struck off and sold in separate tracts, and that the sale was held before

3. ——: ——: the hour fixed in the notices of sale. We do not
sale en masse. think these irregularities are established by the evidence. If true, as alleged, they would not in the absence of fraud affect the title of the purchaser. *Cooley v. Wilson,* 42 Iowa, 425, and authorities there cited.

AFFIRMED.