PRINCE (GOLDEN v.).  See Case No. 5,509.

PRINCE (HOWARD v.).  See Case No. 6,762.

PRINCE (POLYDORE v.).  See Case No. 11,257

PRINCE (SABBICH v.).  See Case No. 12,192.

---

## Case No. 11,425.

### PRINCE v. UNITED STATES.

[2 Gall. 204.] [1]

Circuit Court, D. Massachusetts.  Oct. Term, 1814.

CUSTOMS DUTIES — RELEASE ON GOODS CAPTURED BY ARMED VESSELS—ACT OF AUG. 2, 1813 —RETROACTIVE EFFECT.

1. The act of 2d Aug., 1813, c. 48 [2 Story, Laws, 1374; 3 Stat. 75, c. 49], releasing one third of the duties accruing on goods captured and brought into the United States by any private armed vessel of the United States, did not apply to the case of a vessel captured and brought in before the passing of the act, but not condemned until after it had passed.

[Cited in The Gertrude, Case No. 5,370; U. S. v. Starr, Id. 16,379.]

[Cited in Rich v. Flanders, 39 N. H. 367; Thompson v. Alexander, 11 Ill. 55.]

2. Duties accrue as soon as the goods are voluntarily imported, and this as well as to prize goods, as any other; for the condemnation relates back to the time of importation.

[Cited in U. S. v. Lyman, Case No. 15,647; U. S. v. Dodge, Id. 14,973; U. S. v. Boyd, 24 Fed. 694; McAndrew v. Robertson, 29 Fed. 246.]

[In error to the district court of the United States for the district of Massachusetts.]

This was a writ of error to the district court of Massachusetts, in an action of debt brought by the United States against the plaintiff in error, on a revenue bond for the duties payable on a certain prize cargo imported into the United States. It appeared from the pleadings, that the prize ship and cargo were captured by the private armed schooner Favorite on the 20th of June, 1813, and arrived in the port of Plymouth, where the entry was made, on the 21st day of July of the same year. A prize allegation was filed on the 10th day of the ensuing August, and the vessel and cargo finally condemned in the district court on the 5th of the succeeding month. By the act of congress of 2d of August, 1813 (chapter 48), it is provided, that on all goods, &c. captured from the enemy, and made good and lawful prize of war, by any private armed commissioned ship of the United States, and brought into the United States or their territories, there

---

[1] [Reported by John Gallison, Esq.]

shall be allowed a deduction of 33⅓ per cent. on the amount of duties then imposed by law. The plea, after oyer of the bond and condition, and setting forth the facts above stated, averred, that the defendant, now plaintiff in error, had tendered the amount of duties, deducting one third.

Mr. Prescott and J. T. Austin, for plaintiff in error.

1. Did the statute apply immediately to all goods then within the country, or only to those which should arrive after its passage? The statute is to receive a liberal construction. The court will look at the mischief intended to be remedied, and if possible understand the language of the law in a sense sufficiently broad to meet that mischief. Now the evil complained of was, that the duties were so high, as to discourage privateers, and it was, therefore, thought useful to remit in their favor a part of those duties. This evil was not less felt by those, who were then proceeding in the courts of the United States against prizes before made, than by those who were afterwards to seize and bring them in; nor can any reason be given, consistent with the liberal intentions of congress, why the same indulgence should not be extended to the one as to the other. The language of the act extends to all cases where the duties had not actually been paid. There is nothing in the words themselves to show an intended future operation, and it is as reasonable to supply words, to give a retrospective, as a prospective effect. "All goods, &c. captured," must comprehend all those, which had been captured at any time before. The next clause alone indicates something future, and must mean, "which shall be adjudged good and lawful prize." The court will adopt a different construction, when the duties are to be reduced for the benefit of a class of men engaged in a hazardous service, which is supposed to be useful to the public, from what they would, if the duties were to be increased.

2. The right to duties accrues on the arrival of the goods at a port of entry; but goods brought in by the vis major are not "imported" in the legal sense of the word. In such case no right to duties accrues, until an election is made to enter. Until that time, they are not imported. When goods are brought in by one of our own cruisers, for inquiry and adjudication, the interest remains contingent until such adjudication. They may not be subject to condemnation. By the misconduct of the captors they may become the property of the United States. A claimant may appear, who destined them for some other country. Can any right to duties accrue, while the interest is thus suspended? Consider what inconveniences would follow. The collector, twenty-four hours after the arrival of a prize calls upon the captor and compels him to give bond for the duties. Four months afterwards the

goods are restored to a neutral claimant, who prefers carrying them to his own country to selling them here. In the meanwhile, the captor must pay his bond, without knowing whether the goods will be condemned or not. But, if the duties are to be secured, who is to give the bond? The captors have not the custody, and it would be unreasonable to require of the marshal, who alone can have the custody, to become personally bound for the payment of duties. If, on the other hand, the goods are held in the custody of law until a condemnation, and no duties are paid or secured until it is ascertained by a judicial decree, that they are not the property of neutrals, and they are then entered by the captors and the duties secured, the rights of all parties are preserved, and all inconvenience is avoided. If this be, as it is believed to be, the reasonable construction of the statutes, then the captors ought not to suffer in this case in consequence of their having given bond before the duties had accrued. All the rights and advantages should be saved to them, which they would have had, if the duties had not been secured until after condemnation, which was subsequent to the passage of the act.

Mr. Blake, Dist. Atty., for the United States.

By the act imposing duties on goods imported (U. S. L. 48), the duties accrue on arrival, in whose hands soever they may be, by whomever owned, and under whatever circumstances they may be brought in. This statute is not controlled by the provisions of the law, afterwards passed, regulating the mode of collection. If no one appears to enter the goods and secure the duties within fifteen days, they are then taken into custody, and in due time, no one appearing, they may be sold, to pay the duties. The only question then is, whether any part of the duties is released by the act of August 2d? But this act cannot affect the duties payable upon goods, which had arrived before it passed. These must depend upon the law existing at the time of arrival. Nor was this act intended to relate to goods then in the country. From its language it is obvious, that the legislature meant to provide only for future captures.

STORY, Circuit Justice. The question for the decision of the court is, whether the prize cargo, in this case, is entitled to the benefit of the act for reducing the duties on prize goods, the same having been imported before, but not proceeded against, or condemned, until after the passage of the same act. It is argued by the plaintiff in error, that the statute applies to all cases, where the duties had not become actually due, and had not been paid, before the time of its passage, or at least, to all cases, where the duties had not already accrued; that in prize cases, no title vests in the captors until condemnation, and, therefore, no right to duties can attach

until such adjudication. By the general principles of law, duties accrue upon the voluntary importation of goods into the ports of a country, and the statutes of the United States, imposing duties, affirm these principles. Act 10th Aug. 1790 [1 Stat. 180], c. 39; U. S. v. Vowell, 5 Cranch [9 U. S.] 368. The prize act of the 26th of June, 1812, c. 107, § 14, (which was not cited at the argument,) declares that prize goods, when imported into the United States, shall pay the like duties, as goods imported in the ordinary course of trade are or may at the time (meaning of importation) be liable to pay. Both cases then are to be governed by the same principles. It is true, that until condemnation it cannot be ascertained that the capture was lawful, or the goods rightfully imported. The prize may be a neutral, and decreed to be restored by the court, and in such case no duties would attach, unless the cargo were afterwards voluntarily unladen, and an election made by the neutral to consider the United States, as the port of discharge. See The Concord, 9 Cranch [13 U. S.] 387. Still, though the transaction takes its character from the final adjudication, yet when once that character is ascertained, it relates back to the original importation. If, therefore, condemnation passes upon the property, the duties, by relation, attach from the time of importation, and are payable accordingly.

Such, then, would have been the legal result, if the act of the 2d of August, 1813 (chapter 48), had never been passed. Does that act extend to cases, where, by relation, the title to the full duties had already accrued? It is a general rule, that statutes are to be construed to operate in futuro, unless from the language a retrospective effect be clearly intended. "Nova constitutio futuris formam imponere debet, et non preterites." Bract. lib. 4, fol. 228; 2 Inst. 292. And this maxim applies as well to remedial, as to other statutes. There is nothing in the wording of this act, which points to a retrospective operation, and the whole intent may be satisfied by restraining it to future cases. On the other hand, if a retrospective effect is to be given to this act, the provision must equally apply to all cases of capture made since the war, whether the duties have been paid or not. The words must either read, "on all goods, &c. which have been captured from the enemy, and which have been made good and lawful prize of war, &c. and have been brought into the United States," or, "on all goods &c. which shall be captured from the enemy, and shall be made good and lawful prize of war, &c. and shall be brought into the United States," &c.—Independent of the objection to the former construction, which I have already stated, it is decisive against it, that the manifest object of the legislature would be defeated, for the act would have spent its whole force on past cases, and could not operate in futuro.

On the whole, I am of opinion, that the

prize goods, in this case, are not entitled to the 33⅓ per cent. deduction, and the judgment of the district court is affirmed.[2]

---

2 (As to the time when, and the cases in which duties accrue, see Hale on the Customs, Harg. Law Tracts, 213, 214–224.)

