LARKIN *v.* SAFFARANS and others.

*(Circuit Court, W. D. Tennessee.* February 20, 1883.)

1. JURISDICTION—ENLARGEMENT OF—PENDING CASES—RETROSPECTIVE STATUTES —ACT MARCH 3, 1875.
     Statutes which are remedial will be given a retrospective effect, unless they direct to the contrary. Where, therefore, an act of congress enlarges the jurisdiction of the circuit court, it will be construed to apply to cases pending and undetermined at the passage of the act, unless excluded by its terms or necessary implication from the language of the act.
2. SAME—EJECTMENT—DIRECT TAX SALES—INTERNAL REVENUE—REV. ST. § 629, SUBSEC. 4.
     Whether the circuit court has jurisdiction, under Rev. St. § 629, subsec. 4, of an action of ejectment to enforce possession of a town lot sold by the direct tax commissioners, as provided by the acts of congress on that subject, *quære*; but it has jurisdiction under the act of March 3, 1875, § 1, (18 St. at Large, 470.)

Ejectment.

Only so much of the opinion in this case as relates to the question of jurisdiction is reported here. The remaining portion relates to defenses against the tax title, which are unimportant, since there is no permanent system of direct taxes on real estate, and the questions raised involved only an application of the settled decisions under the tax acts to the special facts of this case.

The plaintiff brought an action of ejectment based on a certificate of sale under the acts of congress for the sale of lands, subject to the direct tax and situated within the insurrectionary districts. The action was commenced on December 31, 1873, the plaintiff and defendants all being citizens of Tennessee. This was the day before the expiration of the seven-years' statute of limitations would have given the defendants an indefeasible title, by lapse of time, as a defense to the action. The declaration originally did not contain any averment that the case was one arising under the internal-revenue laws, or arising under any act of congress, but was subsequently amended to contain the necessary jurisdictional averments. The defendants at first appeared and pleaded the general issue, and certain special pleas set-

ting up their respective defenses, and in 1881, when the declaration was amended, demurred and pleaded want of jurisdiction. There was a trial and verdicts for many of the defendants, but as to some there was a verdict for the plaintiff. These moved for a new trial on several grounds, one of which was error of the court in refusing to dismiss the suit for want of jurisdiction.

*W. M. Randolph,* for plaintiff.

*C. F. Vance* and *C. W. Frazer,* for defendants.

HAMMOND, J.    *    *    *    The next ground for a new trial is based on the objection to the jurisdiction of the court. Resolving all doubt in favor of the jurisdiction, which seems to be the rule in such cases, I have concluded to adhere to the ruling made at the trial and sustain the jurisdiction. *Smith* v. *People,* 47 N. Y. 330, 341. It is proper to state, however, that any doubt entertained on the subject arises out of the want of conclusive authority for this judgment, rather than any want of conviction of its correctness.

Naturally enough, persons holding title under the United States direct sales supposed that cases arising under the acts of congress authorizing the tax were cognizable in the courts of the United States, whether there were a diverse citizenship or not, and actions of ejectment were brought in this court, as this case was, under that belief.

In the case of *Eaton* v. *Calhoun,* 2 Flippin, 593, which was brought on a title derived through, but not directly from, the direct-tax sales, the action, unlike this, was commenced after the act of March 3, 1875, c. 137, (18 St. at Large, 470;) but originally the declaration claimed jurisdiction under the act of March 3, 1833, (4 St. at Large, 632; Rev. St. § 629, subsec. 4,) historically known as the "Force Bill," passed to meet threatened nullification of the revenue laws of the United States. No suggestion was made in the argument of that case before me of jurisdiction under the act of 1875, and it was not until it came to be heard with the circuit judge on the bench that it was relied upon, the suit being found to have been commenced subsequently to the passage of that act. Of course, the question in this case, where the suit was brought *before* and was pending at the time the act of 1875 was passed, did not arise in that case; but here the plaintiff claims, as did that plaintiff until he was let in under the act of 1875, that we have jurisdiction under the act of 1833, and that question is again presented for decision. This case is somewhat better for jurisdiction under the act of 1833 and its amendments than that, because here the purchaser at the tax sale sues directly on his certificate of sale, and the questions involved are those pertaining to

the legality of the sale, while there it was a remote purchaser, in whose chain of title the tax sale was found to be a link, who was suing. Still, perplexing difficulties as to jurisdiction under those acts are so great that if the jurisdiction depended solely on them, I should perhaps feel constrained, for reasons stated in *Eaton* v. *Calhoun*,* to dismiss this case.

But, under the act of 1875, there can be no doubt of our jurisdiction, if the first section applies to cases pending in the courts at the time of its passage. And why does it not apply? Counsel say it is because it is giving that act a retrospective operation, without any words directing that it shall so operate, and because it interferes with vested rights. The first obvious suggestion here is, can the statute, in conferring jurisdiction over suits then pending, be said to act retrospectively in any proper sense? It acts immediately on a thing then in existence, and from that moment gives the court a power to act on that thing which it did not before have; but the idea that it acts retrospectively is founded on the assumption that the question of jurisdiction is to be determined as of the date when the suit was brought, and not as of the date when the decision is made, it being argued that the proceeding was void in the beginning, and cannot be made valid by subsequent legislation. That congress has the power to bestow jurisdiction over a pending suit there can be no doubt whatever, if the act says so in terms; and, in this connection, it must be remembered that there are no constitutional restrictions upon congress in the matter of retrospective legislation as there are in some of the states. *Satterlee* v. *Matthewson*, 2 Pet. 380; *Sinking Fund Cases*, 99 U. S. 700.

The case of *Sampeyreac* v. *U. S.* 7 Pet. 222; S. C. Hempst. 118, is a direct authority for the power of congress to do what the plaintiff claims has been done here; and it will be found that it has been sometimes ruled in the state courts that such legislation interferes with no vested right, since one can have no vested right to any particular remedy, or to sue or be sued in any particular court, or to a defense growing out of mere remedial legislation. For example, a party cannot complain if the legislature enlarges the statute of limitations, if this be done before the bar actually attaches under the old statute. And it will be found that, both in the civil and common law, the repugnance to retrospective legislation was not understood to extend to remedial legislation of that character. In Tennessee we have a constitutional provision "that no re-

*See *post*, 155.

trospective law, or law impairing the obligation of contracts, shall be made," and yet at a very early day it was construed to apply only to the impairment of contracts, and not prohibitory of the large class of legislation affecting remedies, remitting penalties, etc. "In short," says the supreme court, "so many are the past transactions upon which the public good requires posterior legislation, that no government can preserve order, suppress wrong, and promote the public welfare without the power to make retrospective laws." *Townsend* v. *Townsend,* Peck, 1, 17; 1 Tenn. Code, (T. & S.) 79, and notes; 2 Meigs, Dig. (2d Ed.) § 727, p. 886.

Some statutes do not act retrospectively, "unless, for particular reasons, the new laws indicate expressly that their provisions are to apply to the past; *or unless, without such indication, they must serve as a rule to past things;*" as Domat expresses the exception to that maxim derived by us from the civil law, by which we indicate our hostility to retrospective legislation. Broom, Legal Max. (7th Ed.) 34; *Calder* v. *Bull,* 3 Dall. 386; *Foster* v. *Essex Bank,* 16 Mass. 245, 254, 273; *Simmons* v. *Hanover,* 23 Pick. 188; *Dash* v. *Van Kleeck,* 7 Johns. 501; *Pells* v. *Sup'rs,* 65 N. Y. 300; *Templeton* v. *Kraner,* 24 Ohio St. 554, 563. And the rule is that "where the enactment deals with procedure only, unless the contrary be expressed, the enactment applies to all actions, whether commenced before or after the passing of the act." Broom, Legal Max. 35; *Wright* v. *Hale,* 6 Hurl. & N. 227; *Kimbray* v. *Draper,* L. R. 3 Q. B. 160.

This is only in accordance with the general rule that all remedial legislation shall be liberally construed, and particularly should this be so where new remedies are given, and with reference to the bestowal of jurisdiction on the courts. Strictly speaking, it may be that this statute is not an act relating only to procedure in the purview of the last above cited cases; but it takes away from these defendants no right of action, or defense to this action on its merits, if indeed an objection to the jurisdiction can be called a defense at all. The plea protests against the power of the court to act in the premises; it says this suit should not be entertained here because this court has not been empowered to try it. But the very non-existence of the power to hear it may be the strongest reason why the legislature should determine to confer it, and render this defense, if it may be called so, nugatory. Certainly nothing could be more appropriate than for congress to confer on its own courts power to hear controversies arising out of its own laws as the constitution has expressly authorized it to do; and I cannot see how any citizen can acquire a

vested right in any omission of congress to do this, nor why the rule of construction should not be, by analogy to that above mentioned, to apply the act to pending cases, unless there be an express direction to the contrary, as in *Good* v. *Martin*, 95 U. S. 90, 98, where the question was whether a change in the law of evidence applied to pending cases.

If the defendants had made a motion to dismiss, and this case had been by judgment dismissed before congress had passed the new act, or if the court had refused to dismiss for want of jurisdiction and rendered a judgment against the defendants which was void for want of jurisdiction, the case would have been different; and this distinction will be found running through the cases and is reasonable, because then the matter is ended by judgment, there is no pending suit on which to act, as it is past and gone from the court, and in one sense there then vests a right in the defendant to the judgment; it becomes a sort of property, and should not ordinarily be taken from him, and when there are appropriate restrictions on legislative supremacy, as in many of the states, it cannot be. Whether congress is so restricted may be doubtful; but at all events, in such a case, the rule of construction I am applying here would not operate, and nothing less than a specific direction in the statute would authorize the courts to give it that retrospective effect. But the defendant allowed this case to remain here without dismissing it until the want of power to try it was supplied, and when it was tried the objection was no longer tenable; for I think it will be found generally that such questions as this are to be determined as the law exists at the time they are decided, and not at the time the action was instituted. *Oliver* v. *Moore,* 12 Heisk. 482; *Laughlin* v. *Com.* 13 Bush, 261; *Huff* v. *Cook,* 44 Iowa, 639; *State* v. *Union,* 33 N. J. Law, 350. Why take that time as the one by which to test the jurisdiction? Would it not be as reasonable to confine us to the moment of time when the cause of action *accrued,* or to any subsequent time before the new act is passed, and to say that congress can confer no jurisdiction which shall act retrospectively on existing causes of action or controversies, but only on such as arise afterwards, as to say it cannot or has not conferred jurisdiction over pending suits? The language of the act is that this court shall have jurisdiction over "all suits;" but it clearly does not mean only those controversies which have already taken the form of "a suit," as the word is not used in that narrow sense; but if strict and literal construction is alone to prevail, it might be applied only to pending "suits," while certainly such

a construction would not exclude them. 2 Abb. Dict. "Suit," 518; 2 Bouv. Dict. "Suit."

The argument that the suit was void in the beginning, is, I think, a misapprehenson of that term. It is an indefinite expression that has no fixed meaning, and what is only voidable is often called void. 2 Abb. Dict. "Void;" 2 Bouv. Dict. "Void." It is conclusively established by the case of *Sampeyreac* v. *U. S. supra*, that it was not void in the sense of being incapable of confirmation or ratification; and the only real question is whether it has been validated by the act of 1875 enlarging our jurisdiction. The issuance of the writ was not void, nor the filing of the declaration, nor the service of process. They had, at least, vitality to present the question of jurisdiction itself. Hence, the suit was not void; nor does the fact that a judgment rendered against the defendants would have been a void judgment aid the argument, because one in favor of the defendant that the court had no jurisdiction would have been valid. It comes at last to the point that now, at this time, two citizens stand together in a court and propound their respective allegations of fact, and the question is, has that court the authority to decide between them? It had not when they first came here, but has now, and it seems reasonable that the inquiry as to the past is immaterial, if there be a present authority to try the controversy.

Innumerable cases might be cited on the general subject of retrospective legislation more or less pertinent to our present inquiry, but it would be impossible to review or distinguish them within proper limits for this opinion, and I shall merely cite in a note some that may be useful to those who may be required to pursue the investigation. I have not found a single case of binding authority directly in point, though many which strongly support this judgment in principle if not precedent, and some that seem strongly against it. I think, however, that careful attention will readily distinguish these last from this case. The case of *State* v. *Doherty*, 60 Me. 504, for example, which is strongest against the ruling made here, shows plainly that an indictment of a grand jury could not be supplied by subsequent legislation. A criminal proceeding in a court without jurisdiction is not like a civil suit in a court without jurisdiction for obvious reasons. The interesting case of *Fisher's Negroes* v. *Dabbs*, 6 Yerger, 118, illustrates the prevalence of the beneficent principle upon which I base this judgment, and which I find pervading the authorities everywhere, namely, that statutes are, in the absence of directions to the contrary, retrospective in their operation wherever

they are remedial, as where they create new remedies for existing rights, remove penalties or forfeitures, extenuate or mitigate offenses, supply evidence, make that evidence which was not so before, abolish imprisonment for debt, enlarge exemption laws, enlarge the rights of persons under disability and the like, unless in doing this we violate some contract obligation or devest some vested right. And I cannot see why this principle should not apply to statutes enlarging the jurisdiction of courts so as to embrace suits then pending and not ended. In the case last cited one statute was retrospectively construed in favor of a legislative remedy for establishing the freedom of a slave, and the legislature was not permitted by a subsequent act to forbid that retroactive operation, and thereby jurisdiction over a pending suit was saved.

It is proper that I should refer to a class of cases in the supreme court of the United States which hold that laws repealing those acts of congress which confer jurisdiction on our courts, operate on suits then pending to take away the jurisdiction, and I am unable to see why the same principle should not apply here. These cases show that congress has the power to legislate retroactively in such instances; that there are either no vested rights to interfere with, or the interference is lawful; and that, without special reference to pending suits, they are included in such legislation. Again, the power to so legislate is illustrated in the acts of congress, and cases under them, transferring pending suits in a territorial court to the state and federal courts, respectively, when a new state is admitted. *Railroad Co.* v. *Grant*, 98 U. S. 398; *South Carolina* v. *Gailliard*, 101 U. S. 433; *Ex parte McCardle*, 7 Wall. 514; *Benner* v. *Porter*, 9 How. 235; *McNulty* v. *Batty*, 10 How. 72.

The act of 1875 provides especially that suits then pending in the state courts may be removed to this court under that jurisdiction, and it might seem that the omission to provide for pending suits in conferring the original jurisdiction was intentional. But the subject-matter is so different, and the necessity for being more specific in regulating removals is so plain, that I cannot think this rule of construction should override that already discussed, requiring a retroactive effect, also, for the first section of the act. If this suit had been pending in the state court it could have been removed here, and I see no reason for dismissing it because it is here by original cognizance.

The complaint that the defendants make is that if this suit should be now dismissed for want of jurisdiction, the bar of the statute of limitations would attach, and no suit could be brought here or elsewhere

to which that bar would not be a defense, and this is the "vested right" it is desired to secure. I doubt this, and am inclined to think the one-year's saving clause would give the plaintiff another year within which to bring this suit. Tenn. Code, § 2755. But whether this be so or not, nothing is better settled in the cases examined than that a defendant has no vested right in the statute of limitations until the bar attaches, and it may be enlarged by competent legislation; but certainly the defendant can have no such vested right in other legislation pertaining to the exercise of judicial power, or any omission to legislate, as to favor that defense. It would seem, rather, if it were not for a prejudice against tax titles, and this tax title in particular, a reason for retaining this jurisdiction, and perhaps the force of this argument would be admitted in any other case but one of tax title. But if the plaintiff, being in a court competent to acquire the jurisdiction appropriate to his case, and so appropriate as this manifestly is, but without it for want of legislative grant, should find that his title would fail in another court by lapse of time, he might well appeal for relief to the legislature and ask it to either include him in the saving clause, or to confer the necessary jurisdiction on the court where already, by mistake, he found himself; and I have no doubt that in any but a tax-title case the justice of this appeal would be acknowledged. On the whole, I am satisfied there was no error at the trial, and a new trial should be refused.

Motion overruled.

Consult, Wade, Retroactive Laws, §§ 5, 9, 10, 11, 158, 160, 164, 212, 218; Cooley, Const. Lim. 369; Sedg. St. & Const. Law, 188, 193, 198, 201; Potter's Dwarris, St. 162, note 9; 2 Kent, Comm. (12th Ed.) 455, and notes; *Stewart* v. *Laird*, 1 Cranch, 299; *The Grapeshot*, 7 Wall. 563; S. C. 9 Wall. 129; *Express Co.* v. *Kountze Bros.* 8 Wall. 342; *Drehman* v. *Stifle*, 8 Wall. 595; *Gut* v. *State*, 9 Wall. 35; *Society* v. *Wheeler*, 2 Gall. 104; *Prince* v. *U. S.* 2 Gall. 204; *Albee* v. *May*, 2 Paine, 74; *Manuf'g Co.* v. *Ins. Co.* Id. 501; *Gray* v. *Monroe*, 1 McLean, 528; *Wilber* v. *Ingersoll*, 2 McLean, 322; *U. S.* v. *Hughes*, 8 Blatchf. 29; *Norris* v. *Crocker*, 13 How. 429; *Railway* v. *Twombly*, 100 U. S. 78; *Ins. Co.* v. *Ritchie*, 5 Wall. 541; *Steam-ship Co.* v. *Joliffe*, 2 Wall. 450; *Ins. Co.* v. *Canter*, 1 Pet. 512; *Girdner* v. *Stevens*, 1 Heisk. 280; *Collins* v. *Railroad Co.* 9 Heisk. 841; *People* v. *Carnal*, 6 N. Y. 463; *Dubois* v. *Kingston*, 20 Hun, 500; *Carpenter* v. *Shimer*, 24 Hun, 464; *Caperton* v. *Martin*, 4 W. Va. 138; *Rich* v. *Flanders*, 39 N. H. 304; *McCabe* v. *Emerson*, 6 Harris, (Pa.) 111; *Underwood* v. *Lilly*, 10 Serg. & R. 97; *Hepburn* v. *Curtis*, 7 Watts, 300; *Schaeppe* v. *Com.* 65 Pa. St. 51; *Lane* v. *Nelson*, 79 Pa. St. 407; *Ryan* v. *Jackson*, 11 Tex. 400; *Bowen* v. *Callender*, 6 Mass. 309; *Stevens* v. *Stevens*, 1 Metc. (Mass.) 279; *McMillan* v. *Boyle*, 6 Iowa, 304; *Railroad Co.* v. *County*, 39 Iowa, 124, 150; *Tilton* v. *Swift*, 40 Iowa, 78; *State* v. *Norwood*, 12 Md. 195; *Hoa* v. *Lefranc*, 18 La.

Ann. 393; *Railroad Co.* v. *Woodword*, 4 Cal. 162; *Lunden* v. *Railroad Co.* Id. 433; *Mann* v. *McAtee*, 37 Cal. 11; *People* v. *Mortimer*, 46 Cal. 114; *Dent* v. *Holbrook*, 54 Cal. 145; *Henshall* v. *Schmidt*, 50 Mo. 454; *Ex parte Belhurum*, 66 Mo. 545; *Lee* v. *Buchett*, 49 Wis. 54; *State* v. *Moore*, 42 N. J. Law, 208; *Loweree* v. *Newark*, 38 N. J. Law, 151; *Baldwin* v. *Newark*, Id. 158; *Belfast* v. *Folger*, 71 Me. 403; *Sturgis* v. *Hull*, 48 Vt. 302; *Lee* v. *Cook*, 1 Wy. Ter. 413; *Smith* v. *Van Gilder*, 26 Ark. 527; *McDaniel* v. *Correll*, 19 Ill. 226; *Wallpole* v. *Elliott*, 18 Ind. 259; *Bradford* v. *Barclay*, 42 Ala. 375.

---

The following is the manuscript opinion of Judge HAMMOND, ordering a reargument in the case of *Eaton* v. *Calhoun*, referred to in the foregoing opinion, and in the note to the report of that case in 2 Flippin, 593: