BROWN & CO. ET AL. *v.* UNITED STATES (No. 2232).[1]

COURT OF CUSTOMS APPEALS, JURISDICTION—SECTION 489, TARIFF ACT OF 1922.

Notwithstanding that section 489, tariff act of 1922, does not specifically and in terms grant any right of appeal to this court, this court has general jurisdiction under the statute creating it (see sections 195 and 198, Judicial Code; subsection 29 of section 28, tariff act of 1909) to entertain this appeal from the judgment of the Board of United States General Appraisers holding that the new power conferred on them by said section 489 to remit the assessment of additional duties for undervaluation has no retroactive operation. It is the general rule that statutes are prospective and not retrospective unless the contrary appears; and such does not appear from the language of section 489. Section 641, providing that legal changes made by the act should not affect *any act done* or any *right accruing or accrued* and that *all liabilities* under prior laws should continue and be enforced in the same manner, distinctly forbids retroaction by section 489. Importers' *act* of undervaluation was already *done*, and the Government's *right* to additional duties *accrued* and the importers' *liability* to pay them was incurred at the time of entry, not liquidation. So, where undervaluation in entry was made before, but liquidation after, the institution of the tariff act of 1922, the question of additional duty was governed by the tariff act of 1913 (par. I, Section III), and the petition to the Board of United States General Appraisers for remission allowed by section 489, tariff act of 1922, was not available to importers.

United States Court of Customs Appeals, February 9, 1924.

APPEAL from Board of United States General Appraisers, Abstract 45516.

[Affirmed.]

*Allan R. Brown* for appellants.

*William W. Hoppin,* Assistant Attorney General (*Abraham H. Goodman,* special attorney, of counsel), for the United States.

*Thomas J. Doherty,* amicus curiæ.

---

[1] T. D. 40026.

[Oral argument October 23, 1923, by Mr. Brown and Mr. Hoppin.

Before MARTIN, Presiding Judge, and SMITH, BARBER, and BLAND, Associate Judges; HATFIELD, Associate Judge, participating in the decision by agreement of counsel.

BLAND, Judge, delivered the opinion of the court:

All of the entries in this case were made prior to the passage of the tariff act of September 21, 1922, the first entry having been made on October 31, 1921, and the last February 10, 1922. The appraiser appraised the merchandise, bamboo baskets, at $0.80 per set, plus cases and Canton duty. They had been entered at $0.75 per set, plus cases and Canton duty. The importer called for reappraisement. The reappraisements were tried before General Appraiser McClelland on June 9, 1922. He appraised the goods at $0.75 per set plus cases and Canton duty, as entered. The collector then appealed to the Board of three General Appraisers, and the board's decision was rendered on September 22, 1922, the day upon which the tariff act took effect. The Board of three General Appraisers found the value of the merchandise to be $0.80 per set plus cases and Canton duty.

Under the act of 1913, paragraph I of Section III, it was provided that if the appraised value of merchandise exceeded the value declared by the importer on entry, there should be levied, collected, and paid, in addition to the duties imposed by law, an additional duty of 1 per cent of the total appraised value thereof for each 1 per cent that such appraised value exceeds the value declared in the entry. While the act provided that it should not be construed to be a penalty, it is clear that Congress intended the additional duty clause to be a preventive of undervaluation. Substantially the same provision concerning undervaluation had been in several preceding general tariff acts. There was no remedy for recovering additional duties so levied under the act of 1913 except on application to the Secretary of the Treasury in cases arising from manifest clerical error.

In the act of 1922, section 489, Congress enlarged the rights of the importer to recover additional duties by providing that they might be remitted by the Board of General Appraisers on petition filed and supported by satisfactory evidence that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States, or to conceal or misrepresent the facts in the case, or deceive the appraiser as to the value of the merchandise.

Additional duties when levied for undervaluation are assessed by the collector at the time of liquidating the entry, and after the final appraisement has shown the value of the merchandise.

On October 20, 1922, the importers filed, under section 489 of the tariff act of 1922, a petition asking for the remission of additional

duties on the entries in question, which petition was filed prior to liquidation and was filed presumably to be in conformity with a rule of the Board of General Appraisers providing that such petition should be filed within 30 days after date of final appraisement.

On November 24, 1922, before the Board of General Appraisers, when the petition was up for hearing, the Government moved to dismiss the case for the reason that the merchandise was appraised prior to the passage of the act of 1922, and on the additional ground that the petition was not filed in time. The board heard the evidence of the importer, and the motion to dismiss was taken under advisement.

On December 7, 1922, the collector liquidated two of the entries and levied additional duties.

On December 14, 1922, the importer filed a second petition for remission of additional duties covering the two liquidated entries. Both petitions were heard December 22, 1922. The Government amended its motion to dismiss on the ground that the entries had been made prior to the passage of the act of 1922.

The board rendered its decision January 2, 1923. They held that—

The convincing character of the testimony submitted by the importers unquestionably entitled them to the relief prayed for—

but that under the rule in Olaf Hertzwig Trading Co. (petition 37–R) the board was without jurisdiction in the premises. From this decision of the board on the dismissal of the petition for remission, the importers have taken this appeal.

In this court the Government filed a motion to dismiss the appeal of the importers on the ground that this court had no jurisdiction to hear and entertain the same. It is the Government's position that the right to appeal is a statutory one, and that section 489 of the act of 1922 concerning the remission of additional duties does not give the right to appeal thereunder, and that this court is a court of limited jurisdiction and can hear only such appeals as are specifically provided for by law.

We can not agree with the Government's position that since the act of 1922 granted no right to appeal under this section that no appeal to this court is permissible.

Sections 195 and 198 of the Judicial Code adopted March 3, 1911, embody the law as originally found in. subsection 29 of section 28 of the tariff act of August 5, 1909, as follows:

SEC. 195. The Court of Customs Appeals established by this chapter shall exercise exclusive appellate jurisdiction to review by appeal, as herein provided, final decisions by a Board of General Appraisers in all cases as to the construction of the law and the facts respecting the classification of merchandise and the rate of duty imposed thereon under such classification, and the fees and charges connected therewith, and all appealable questions as to the jurisdiction of said board, and all appealable questions as to the laws and regulations governing the collection of the customs revenues; * * *

SEC. 198. If the importer, owner, consignee, or agent of any imported mer-
chandise, or the collector or Secretary of the Treasury, shall be dissatisfied with
the decision of the Board of General Appraisers as to the construction of the law
and the facts respecting the classification of such merchandise and the rate of
duty imposed thereon under such classification, or with any other appealable
decision of said board, they, or either of them, may, within sixty days next after
the entry of such decree or judgment, and not afterwards, apply to the Court of
Customs Appeals for a review of the questions of law and fact involved in such
decision.   *   *   *

It will not be contended that these sections have been repealed,
or that they have in any way been modified or changed by the act
of 1922.   It seems to be the position of the Government that appeals
under the act of 1922 are only permitted in the instances specified
in the act.   Such a contention nullifies the effect of the code above
referred to.   The action of the board in dismissing the petition for
rehearing is a final decision "as to the construction of the law   *   *   *
respecting the rate of duty imposed and the fees and charges con-
nected therewith," and such action on the part of the board raises
"an appealable question as to the jurisdiction of said board," and
also raises an appealable question "as to the laws and regulations
governing the collection of customs revenues."   Section 198 gives
the importer, if he is not satisfied with the decision of the Board of
General Appraisers on "any other appealable decision," an appeal
to this court "for a review of questions of law and fact involved in
such decision."   This court has taken jurisdiction in cases involving
final decisions on shortage, clerical error, entered values, additional
duties, amendment of entry, admissibility of evidence, and various
other related questions, having no authority for the procedure other
than the sections of the statute above referred to.   This court has
not taken jurisdiction in any case where the statute indicates that it
has no right of review.   The motion by the Government to dismiss
the appeal is, therefore, overruled.

Having determined that this court has jurisdiction to review the
action of the board in dismissing the petition for remission, we pro-
ceed to determine the sole question decided by the board as to
whether they had jurisdiction to hear and determine the petition for
remission of additional duties under section 489 of the tariff act of
September 21, 1922, which reads as follows:

ADDITIONAL DUTIES.—If the final appraised value of any article of imported
merchandise which is subject to an ad valorem rate of duty or to a duty based
upon or regulated in any manner by the value thereof shall exceed the entered
value, there shall be levied, collected, and paid, in addition to the duties imposed
by law on such merchandise, an additional duty of 1 per centum of the total final
appraised value thereof for each 1 per centum that such final appraised value
exceeds the value declared in the entry.   Such additional duty shall apply only
to the particular article or articles in each invoice that are so advanced in value
upon final appraisement and shall not be imposed upon any article upon which
the amount of duty imposed by law on account of the final appraised value does

not exceed the amount of duty that would be imposed if the final appraised value did not exceed the entered value, and shall be limited to 75 per centum of the final appraised value of such article or articles. Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except in the case of a manifest clerical error, upon the order of the Secretary of the Treasury, or in any case upon the finding of the Board of General Appraisers, upon a petition filed and supported by satisfactory evidence under such rules as the board may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. If the appraised value of any merchandise exceeds the value declared in the entry by more than 100 per centum, such entry shall be presumptively fraudulent, and the collector shall seize the whole case or package containing such merchandise and proceed as in case of forfeiture for violation of the customs laws; and in any legal proceeding other than a criminal prosecution that may result from such seizure, the undervaluation as shown by the appraisal shall be presumptive evidence of fraud, and the burden of proof shall be on the claimant to rebut the same, and forfeiture shall be adjudged unless he rebuts such presumption of fraud by sufficient evidence.

Upon the making of such order or finding, the additional duties shall be remitted or refunded, wholly or in part, and the entry shall be liquidated or reliquidated accordingly. Such additional duties shall not be refunded in case of exportation of the merchandise, nor shall they be subject to the benefit of drawback. All additional duties, penalties, or forfeitures applicable to merchandise entered in connection with a certified invoice shall be alike applicable to merchandise entered in connection with a seller's or shipper's invoice or statement in the form of an invoice. Duties shall not, however, be assessed upon an amount less than the entered value, except in a case where the importer certifies at the time of entry that the entered value is higher than the value as defined in this act, and that the goods are so entered in order to meet advances by the appraiser in similar cases then pending on appeal for reappraisement or re-reappraisement, and the importer's contention in said pending cases shall subsequently be sustained, wholly or in part, by a final decision on reappraisement or re-reappraisement, and it shall appear that the action of the importer on entry was so taken in good faith, after due diligence and inquiry on his part, and the collector shall liquidate the entry in accordance with the final appraisement.

It is the contention of the importers in this case that this section is remedial in character and is intended to be retroactive and apply to additional duties which arise by reason of importations prior to the passage of the act of 1922; that remedial acts are retroactive, and as such are not prohibited by the Constitution; that all remedial acts are retroactive unless the act specifically provides to the contrary; and that the saving clause or clauses in section 641 of the tariff act of September 21, 1922, does not prevent the retroactive application of section 489.

The Government insists that section 489 is not retroactive, and that to so apply it would be in contravention of the Constitution as affecting prior rights and liabilities; that section 489 is not remedial

within the meaning of the decisions of the courts which give retro-active effect to certain statutes, and that Congress has definitely and specifically provided under section 641 that section 489 shall not be retroactive, and that all additional duties levied upon goods entered prior to the passage of the act of 1922 are in no sense affected by section 489.

The rule laid down in Larkins *v.* Saffarans (15 Fed. 147, 152–153) that—

statutes are, in the absence of directions to the contrary, retrospective in their operations wherever they are remedial, as where they create new remedies for existing rights, remove penalties or forfeitures, extenuate or mitigate offences, supply evidence, make that evidence which was not so before, abolish imprisonment for debt, enlarge exemption laws, enlarge the rights of persons under disability, and the like, unless in doing this we violate some contract obligation or divest some vested right—

is supported by considerable very respectable authority. However, Judge Story sitting as Circuit Judge in the District of Massachusetts, in Prince *v.* United States (19 Fed. Cas. 1331) said:

It is a general rule that statutes are to be construed to operate in futuro un-less from the language a retrospective effect be clearly intended. "Nova con-stitutio futuris formam imponere debet, et non preterites." (Bract. lib. 4, fol. 228; 2 Inst. 292.) And this maxim applies as well to remedial as to other statutes.

If the rule in the Larkins case, supra, was admitted to be the settled law, there are a number of very forceful reasons why the case at bar does not come within this rule. The tariff act of 1913 gave the importer the right to apply to the Secretary of the Treasury for remission of additional duties only in case of clerical error. The act of 1922 not only gives this same right, but gives to the importer an additional new right, as well as a remedy for obtaining it, namely, the right to petition the Board of General Appraisers for the remission of additional duties levied by reason of undervaluation when made without any intention of defrauding the revenues of the United States or concealing or misrepresenting the facts of the case, or of deceiving the appraiser as to the value of the merchandise. It is with this new right we are concerned in this case, and not with the old right existing under the act of 1913. The importer has his remedy to obtain the remission of the additional duties other than those arising from manifest clerical error only by virtue of the new statute. It certainly can not be contended that he has the right to apply a new remedy given for the enforcement of the new right to a different old right. The books are full of authorities supporting the general principle that statutes are directed to the future, and are prospective and not retrospective, unless from the language a retro-spective effect be clearly intended. Cooley's Const. Lim. (530, 531);

Prince *v.* United States (19 Fed. Cas. 1331); Chew Heong *v.* United States (112 U. S. 536); White *v.* United States (191 U. S. 545); Union Pacific R. R. Co. *v.* Laramie Stock Yards (231 U. S. 190); Union Pacific R. R. Co. *v.* Snow (231 U. S. 204); Cameron *v.* United States (231 U. S. 710).

It is clear that that part of section 489 of the tariff act of 1922 relating to the remission of duties does not on its face indicate that Congress intended to make it apply to past entries, and even if Congress had not seen fit to include in the act the general saving clause contained in section 641, we do not believe under either of the rules heretofore stated that section 489 should be construed to be retroactive. But the framers of the act did include section 641, which in our opinion leaves no doubt upon the question that they did not intend that petitions for remissions of duties which arise from entries made prior to the passage of the act should be heard or decided under the provisions of the new act.

Section 641 reads as follows:

RIGHTS AND LIABILITIES.—The repeal of existing laws or modifications thereof embraced in this act shall not affect any act done, nor any right accruing or accrued, nor any suit or proceeding had or commenced in any civil or criminal case prior to said repeal or modifications, but all liabilities under said laws shall continue and may be enforced in the same manner as if said repeal or modifications had not been made. All offenses committed and all penalties, forfeitures, or liabilities incurred prior to the taking effect hereof, under any statute embraced in, or changed, modified, or repealed by this act, may be prosecuted and punished in the same manner and with the same effect as if this act had not been passed. No acts of limitations now in force, whether applicable to civil causes and proceedings, or to the prosecution of offenses, or for the recovery of penalties or forfeitures embraced in, modified, changed, or repealed by this act, shall be affected thereby so far as they affect any suits, proceedings, or prosecutions, whether civil or criminal, for causes arising or acts done or committed prior to the taking effect of this act, which may be commenced and prosecuted within the same time and with the same effect as if this act had not been passed.

It will be noted that this section specifically provides that *any act done* or any *right accruing or accrued* shall not be affected by the repeal or modification of the then existing laws, and that all *liabilities* under said laws shall continue and may be enforced in the same manner as if said repeal or modification had not been made. Congress certainly did not intend that the procedure in the act of 1922, for obtaining a right granted by said act, should be resorted to in an effort to obtain an alleged right claimed to exist prior to the passage of said act, but which in fact did not so exist.

It is argued by the importer that the Government has no rights, and that the importer only can be said to have rights. We can not agree with this view. In Harris *v.* Dennie (28 U. S. [3 Pet.] 290, 305) Justice Story held that the Government's right to duties took

precedence over an attachment issued by a State court, although the deputy sheriff had physical possession of the merchandise on the vessel before it was entered in the customs and before the customs officers had arrived. The court said:

In short the United States having a lien on the goods for the payment of the duties accruing thereon, and being entitled to a virtual custody of them, from the time of their arrival in port until the duties are paid or secured, any attachment by a State officer is an interference with such lien and right of custody; and being repugnant to the laws of the United States, is void.

The same judge, in Meredith v. United States (38 U. S. [13 Pet.] 486), held:

The right of the Government to the duties accrues when the goods have arrived at the proper port of entry, and, thus accruing, they are a personal debt of the importer, notwithstanding that their actual payment may be postponed upon the giving of a bond for them.

It seems to us that the decision in this case must rest upon the answers to the inquiries, Does the Government have any right accruing or accrued to additional duties at the time of entry if the merchandise is undervalued? and, Is there a liability upon the importer to the Government for additional duties at the time of entry if there is an undervaluation? To both of these questions the answers should be in the affirmative. It may be contended that the Government has a right to regular duties at the time of entry, but that it has no right to the additional duty at the time of entry, and that there is no liability accruing or accrued on the part of the importer for additional duty at the time of entry. Additional duties under both statutes under discussion arise by virtue of undervaluation at the time of entry. It is the act of undervaluation that Congress sought to prevent. The undervaluation was made at the time of entry, and it was then that the liability of the importer for additional duties and the right of the Government to them began and continued to exist. Subsequent appraisement or reappraisement does not change undervaluation. Appraisement is only to determine what the market value, by which the valuation is measured, was on the date of exportation from the country from which the merchandise was exported. The obligation to pay additional duty therefore arose at the time the importer, in entering his merchandise, gave a valuation which was less than the market value at the time it left the foreign country, and was a liability within the meaning of section 641. The statute clearly provides that this liability "shall continue and may be enforced in the same manner as if said repeal or modification had not been made." If the liability continues and is to be enforced under the provisions of the old law, how can it be contended that the importer has any rights for remission other than by virtue of those arising

from manifest clerical error? To give any other construction to this statute would lead us into interminable confusion.

In the same section 489 it is provided that—

If the appraised value of any merchandise exceeds the value declared in the entry by more than 100 per centum, such entry shall be presumptively fraudulent, and the collector shall seize the whole case or package containing such merchandise and proceed as in case of forfeiture for violation of the customs law.

In the act of 1913, it is provided that if the appraised value "exceeded the entry value by more than 75 per centum" the entry should be held to be presumptively fraudulent. If this section of the act of 1922 is held to be retroactive as to additional duties, it would follow that it would be retroactive as to the percentage of undervaluation required for presumption of fraud. We think Congress here intended that a new standard or percentage of undervaluation should be made for new entries, and that they did not intend that those charged with the administration of the law should be required to readminister on fraudulent entries which arose under the act of 1913. To give a retroactive effect to section 489 would also justify the giving of the same effect to many different provisions in the act of 1922 which were not contained in the act of 1913. Section 516 on appeal or protest by American producers, and section 517 on frivolous protest or appeal, would also have a retroactive effect, and we do not think Congress so intended.

It will not be denied that the Government was entitled to regular duties on the correct market value when the goods were entered, notwithstanding the fact that the amount thereof was not finally determined until long after, and it seems clear that the same rule applies to additional duties, and that the fact that they were only declared upon final appraisement does not change the time of their accrual any more than it changes the time the importer becomes liable for regular duties.

It is urged by the importer that the liability for additional duties does not arise until after liquidation. Liquidation does not create any liability to pay duty. It merely registers the fact that duties had theretofore accrued to the Government. In United States *v.* Boyd (24 Fed. 692) the court held:

The right to duties accrues by the importation of merchandise with the intent to unlade, and immediately upon the importation the duties become a personal charge and debt upon the importer. (Citing Prince *v.* United States, supra.)

The case of the United States *v.* Brown & Roese (6 Ct. Cust. Appls. 382; T. D. 35922) is directly in point in the decision of the case at bar. In that case liquidation was had September 22, 1913, under the act of 1909. The protest was filed October 4, 1913, one day after the act of 1913 took effect. The act of 1909 did not require a pro-

test fee: the act of 1913 required payment of $1 within 30 days after the protest was filed. The court at page 383 said:

The sole question standing for decision is whether the Congress saved the right to proceed in accordance with the provisions of the act of 1909 by paragraph S of section 4 of the act of 1913, which contained these provisions:

* * * But the repeal of existing laws or modifications thereof embraced in this act shall not affect any act done, or any right accruing or accrued, or any suit or proceeding had or commenced in any civil case before the said repeal or modification; but all rights and liabilities under said laws shall continue and may be enforced in the same manner as if said repeal or modifications had not been made. Any offenses committed and all penalties or forfeitures or liabilities incurred prior to the passage of this act under any statute embraced in or changed, modified, or repealed by this act may be prosecuted or punished in the same manner and with the same effect as if this act had not been passed. No acts of limitation now in force, whether applicable to civil causes and proceedings or to the prosecution of offenses or for the recovery of penalties or forfeitures embraced in or modified, changed, or repealed by this act shall be affected thereby so far as they affect any suits, proceedings, or prosecutions, whether civil or criminal, for causes arising or acts done or committed prior to the passage of this act, which may be commenced and prosecuted within the same time and with the same effect as if this act had not been passed.

That the right to protest against the assessment of duties by the collector had accrued before the repeal of the act of 1909 took effect is clear. The saving clause of paragraph S declares that "the *repeal* of existing laws or *modifications* thereof embraced in this act shall not affect any act done or any right accruing or accrued * * * before the said repeal or modification," and that "all rights * * * under said laws shall continue and may be enforced in the *same manner* as if said repeal or modifications had not been made." The least that can be said is that paragraph N of section 3 of the act of 1913 modifies the manner of enforcing the right. It extends the time for filing protests, and at the same time imposes an additional requirement, i. e., payment of a fee. It can not be said that the importer is given the privilege of enforcing his rights in the same manner as under the act of 1909 if he is subjected to an additional burden.

A case cited by importer's counsel is Bechtel v. United States (101 U. S. 597). The Government brought suit to recover against certain manufacturers of matches for the value of revenue stamps delivered to the defendants, and at the trial offered in evidence a transcript of the defendant's account upon the books of the Treasury Department, which was admitted over objection. By section 2 of the act of March 3, 1797, certified transcripts of the accounts of the Treasury and all departments were competent evidence in all such cases. This act was in force at the time suit was brought. Before the case came to trial, however, section 886 of the Revised Statutes was passed, which made such transcripts competent evidence only in suits against revenue officers. The question was whether the right to introduce these transcripts, notwithstanding the change in the law which would, as to future cases, render them inadmissible, was saved by the provision of section 5597 of the Revised Statutes, which provided:

The repeal of the several acts embraced in said revision shall not affect any act done, or any right accruing or accrued, or any suit or proceeding had or commenced in any civil cause before the said repeal, but all rights and liabilities under said acts shall continue, and may be enforced in the same manner as if said repeal had not been made. * * *. (p. 384.)

It will be noted that the saving clause of the act of 1913 construed in the Brown & Roese case, supra, is in substantially the same language as is used in the act of 1922. True, the word "right" is omitted

where it is used in connection with liabilities, but this is not regarded as material in the decision of the case at bar in so far as we hold that the obligation of paying additional duties was a liability of the importer at the time of undervaluation, and that this liability should continue and be enforced by the act of 1913. All the entries in the case having been made prior to the passage of the act of September 21, 1922, and the additional duties having been assessed by virtue of the undervaluation made at the time of entry, it follows that there is no remedy given for the remission of such duties except as provided for under the act of 1913, and that the Board of General Appraisers had no jurisdiction to hear petitions for remission of additional duties when filed under and in pursuance to the provisions of the act of 1922.

The judgment of the Board of General Appraisers is *affirmed.*