**PORTO RICO BROKERAGE CO., Inc., et al. v. UNITED STATES.**

Customs Appeal No. 3666.

Court of Customs and Patent Appeals.

June 12, 1934.

James R. Beverley and Jesus A. Gonzalez, both of San Juan, P. R., and Ryder Patten, of San Juan, P. R., for appellant.

Charles D. Lawrence, Asst. Atty. Gen. (William H. Futrell, Sp. Atty., of New York City, of counsel), for the United States.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from a judgment of the United States Customs Court, Third Division, holding certain coffee brought into the port of San Juan, Porto Rico (now Puerto Rico, and so referred to hereinafter, see 47 Stat. 158, c. 190), from the United States, during the months of February, March, and April, 1931, dutiable at 10 cents per pound as assessed by the Collector at that port by virtue of the provisions of Joint Resolution No. 59, adopted by the Legislature of Puerto Rico, approved by the Governor May 5, 1930, and section 319 of the Tariff Act of 1930, enacted June 17th of that year (19 USCA § 1319).

We quote from Joint Resolution No. 59:

"Whereas, As a result of the hurricane of September 13, 1928 the coffee industry suffered losses estimated at seventy-five per cent, and one-fourth of the rural population of Porto Rico was reduced to a condition of misery;

"Whereas, The lands devoted to the cultivation of coffee are, due to their hilly nature, unsuitable for the employment of mechanical means of cultivation, and the enforced use of manual labor increases the cost of production to such an extent that it makes it impossible to compete in price with other coffee exporting countries;

"Whereas, The prices now prevailing in the world market are ruinous to such an essentially Porto Rican industry, and, in the absence of tariff protection, the industry would very soon disappear;

"Whereas, An act is now pending approval by the Congress of the United States, which authorizes the Legislature of Porto Rico to impose a duty of ten cents on every pound of foreign coffee imported into Porto Rico;

"Now, Therefore, Be it resolved by the Legislature of Porto Rico:

"Section 1. From and after August 1, 1930, an import duty of ten cents a pound is hereby levied on all coffee imported into Porto Rico, such duty to be collected by the

Federal Customs Service established in Porto Rico, according to such regulations as said Service may prescribe.

"Section 2. All laws or parts of laws in conflict herewith are hereby repealed.

"Section 3. This Act shall take effect as soon as any act is approved by the United States Government, whereby the Legislature of Porto Rico is authorized to impose an import duty on all coffee brought into this Island."

Section 319, supra, reads as follows:

"Sec. 319. *Duty on Coffee Imported Into Porto Rico.*

"The Legislature of Porto Rico is hereby empowered to impose tariff duties upon coffee imported into Porto Rico, including coffee grown in a foreign country coming into Porto Rico from the United States. Such duties shall be collected and accounted for as now provided by law in the case of duties collected in Porto Rico."

The appeal involves four protests, which were consolidated for the purpose of the trial in the court below.

On the trial below, counsel for the government moved to dismiss protest No. 523,-427—G as to entry No. 2048, on the ground that the protest was filed more than sixty days after that entry was liquidated by the Collector. Counsel for the importers stated that "we have no objection" to the granting of the motion.

It appears from the record that protest No. 523,427—G, supra, involved, in addition to entry No. 2048, supra, entry No. 2349, liquidated June 8, 1931. In view of the fact that that protest was filed July 18, 1931, it was timely as to the latter entry.

The trial court, evidently through inadvertence, dismissed the protest in its entirety, whereas it should have been dismissed as to entry No. 2048 only.

Appellants included entry No. 2048 in protest No. 523,427—G in their appeal to this court. Thereafter, on December 23, 1933, the appeal was dismissed by this court, so far as it related to that entry, in accordance with a stipulation entered into by counsel for the parties on December 18, 1933.

The cause was submitted to the court below on a stipulation of facts entered into by counsel for the parties, wherein it appears, among other things, that the Collector of Customs, in accordance with an opinion of the Attorney General of Puerto Rico, did not collect duties on the involved merchandise "until on and after July 15, 1930."

It was claimed by counsel for appellants in the court below, and it is claimed here, that Joint Resolution No. 59 is null and void, because, it is argued, at the time of its passage, the Legislature of Puerto Rico had no authority to pass such an act, but, on the contrary, was expressly prohibited from so doing by the Organic Act of Puerto Rico, enacted by the Congress, March 2, 1917, c. 145, 39 Stat. 951, 48 U. S. C. c. 4, §§ 731 to 893 (48 USCA §§ 731–893). Counsel further contend that section 319, supra, if valid for any purpose, was obviously intended by the Congress to operate prospectively and not retroactively.

Counsel for appellants have raised other questions with regard to the legality of the assessment of duty against the involved merchandise. However, due to the views we hold, we deem it unnecessary to set them out here.

The court below in an exhaustive opinion held, as we understand its decision, that, although at the time the Joint Resolution was adopted, the Legislature of Puerto Rico was without authority to impose duties on coffee imported into that territory, the Congress of the United States, by the enactment of the provisions of section 319, supra, intended to ratify the action taken by the Legislature of Puerto Rico, and to validate Joint Resolution No. 59, and that, therefore, the involved duties were lawfully assessed.

Although by the Treaty signed at Paris, December 10, 1898, duly ratified, and, thereafter, on April 11, 1899, duly proclaimed (30 Stat. 1754), Puerto Rico was ceded to, and came under the sovereignty of, the United States as a "dependency or possession," it has not been incorporated into the United States as an integral part thereof. On the contrary, it has been, and now is, "governed under the power existing in the Congress to make laws for such territories." Downes v. Bidwell, 182 U. S. 244, 21 S. Ct. 770, 45 L. Ed. 1088; Hawaii v. Mankichi, 190 U. S. 197, 23 S. Ct. 787, 47 L. Ed. 1016; Dorr v. United States, 195 U. S. 138, 24 S. Ct. 808, 49 L. Ed. 128, 1 Ann. Cas. 697; Rasmussen v. United States, 197 U. S. 516, 25 S. Ct. 514, 49 L. Ed. 862; New York ex rel. Kopel v. Bingham, 211 U. S. 468, 29 S. Ct. 190, 53 L. Ed. 286; Porto Rico v. Rosaly y Castillo, 227 U. S. 270, 33 S. Ct. 352, 57 L. Ed. 507; People of Porto Rico v. Tapia, 245 U. S. 639, 38 S. Ct. 192, 62 L. Ed. 525.

Section 57 of the Organic Act of Puerto Rico, 48 U. S. C. § 735 (48 USCA § 735), provides:

" * * * The laws and ordinances of Porto Rico in force on March 2, 1917, shall continue in force and effect, except as altered, amended, or modified in this chapter, until altered, amended, or repealed by the legislative authority herein provided for Porto Rico or by Act of Congress of the United States; and such legislative authority shall have power, when not inconsistent with the provisions of this chapter, by due enactment to amend, alter, modify, or repeal any law or ordinance, civil or criminal, continued in force by this chapter as it may from time to time see fit. (Apr. 12, 1900, c. 191, § 15, 31 Stat. 80; Mar. 2, 1917, c. 145, § 57, 39 Stat. 968.)"

Section 3 of the Act of April 12, 1900, 48 U. S. C. § 738 (48 USCA § 738), provides that:

" * * * All merchandise and articles coming into the United States from Porto Rico and coming into Porto Rico from the United States shall be entered at the several ports of entry free of duty and in no event shall any duties be collected on said merchandise or articles. * * * "

It is evident, therefore, as held by the court below, that the Legislature of Puerto Rico did not have the power, at the time it adopted the Joint Resolution, to provide an import duty on coffee brought into that territory from the United States. Furthermore, unless the Congress intended, by the provisions of section 319, supra, to validate Joint Resolution No. 59, the involved duties were illegally assessed.

It is argued by counsel for appellants that, although the Congress has the power to impose import duties directly on merchandise brought into Puerto Rico from the United States, it does not have the power to delegate such authority to the Legislature of Puerto Rico, and that it could not by ratification make valid the exercise of an authority which it did not have the power to delegate.

In view of the fact that we have concluded that the Congress, by the enactment of section 319, supra, did not intend to validate the Joint Resolution, for reasons hereinafter set forth, we deem it unnecessary to express any opinion upon the question of whether the Congress has the power to delegate authority to the Legislature of Puerto Rico to impose import duties on coffee grown in a foreign country and brought into that territory from the United States. In this connection, however, see Dooley v. United States, 183 U. S. 151, 22 S. Ct. 62, 46 L. Ed.

128; United States v. Heinszen & Co., 206 U. S. 370, 27 S. Ct. 742, 51 L. Ed. 1098, 11 Ann. Cas. 688. Assuming, for the purpose of this decision, that the Congress had such authority, and, therefore, had the power by appropriate legislation to validate the Joint Resolution, we proceed to a discussion of the question of whether, by the enactment of section 319, supra, the Congress intended merely to confer a power to be exercised by subsequent legislation, or whether it intended, by ratification, to validate the Joint Resolution which was prematurely adopted.

It is a fundamental rule of statutory construction that, as retrospective and retroactive legislation is not favored, statutes, except those in certain instances relating to remedies and procedure, are to be construed, in the absence of language clearly expressing a contrary intention, as having only prospective, rather than retrospective and retroactive, operation. Brown & Co. et al. v. United States, 12 Cust. App. 93, T. D. 40026, and cases cited; Penick & Ford (Ltd., Inc.) v. United States, 12 Cust. App. 218, T. D. 40228, and cases cited; 59 C. J. 1159 to 1173, §§ 692 to 700.

Although it is true, as argued by counsel for the government, that it appears from the provisions of Joint Resolution No. 59 that the Legislature of Puerto Rico was informed that the Congress contemplated authorizing it to impose a duty of 10 cents per pound on coffee imported into Puerto Rico, and that, as evidenced by the provisions of section 319, supra, the Congress was aware of the existence of conditions in Puerto Rico which it thought could be remedied, to some extent at least, by the placing of a duty of 10 cents per pound on coffee imported into that territory, nevertheless, we are of opinion that there is nothing in the language of section 319, nor in its legislative history, to indicate that the Congress intended that the provisions of that section should operate retroactively, either for the purpose of validating Joint Resolution No. 59, or for any other purpose. On the contrary, the language, "the Legislature of Porto Rico is *hereby empowered* to impose tariff duties upon coffee imported into Porto Rico," etc., contained in section 319, evidences clearly, we think, a purpose to legislate for the future. (Italics ours.)

In the Conference Report, Report No. 1890, to accompany H. R. 2667, which later became the Tariff Act of 1930, at page 33, we find the following:

"Amendment numbered 1126:

"That the House recede from its disagreement to the amendment of the Senate numbered 1126, and agree to the same with an amendment as follows:

"In lieu of the matter proposed to be inserted by the Senate amendment insert the following:

"*Sec. 319. Duty on Coffee Imported Into Porto Rico.*

"*The Legislature of Porto Rico is hereby empowered to impose tariff duties upon coffee imported into Porto Rico, including coffee grown in a foreign country coming into Porto Rico from the United States. Such duties shall be collected and accounted for as now provided by law in the case of duties collected in Porto Rico.*

"And the Senate agree to the same."

At page 110 of that report, "The Managers on the part of the House," reported to the House of Representatives, relative to Senate Amendment No. 1126, that:

"* * * This amendment empowers the Legislature of Porto Rico to impose duties upon coffee imported into Porto Rico, including coffee produced in a foreign country coming into Porto Rico from the United States. The duties, less the cost of collection, are to be covered into the Treasury of Porto Rico, to be expended as required by law for the Government and benefit thereof. The amendment also provides that the United States Customs and Postal Services shall assist the Porto Rican officials in the collection of such duties. The House recedes with amendments providing that the duties may be imposed upon coffee 'grown' in a foreign country, instead of coffee 'produced,' in order that the authority will extend to coffee imported into the United States, processed, and then shipped to Porto Rico, and providing that the duties shall be collected in the manner now provided by law in the case of duties collected in Porto Rico."

If it be assumed that the Congress had knowledge of the adoption of the Joint Resolution and that the Legislature of Puerto Rico had attempted to make the resolution effective when approved by the Congress, surely, if it intended to approve the premature action of the Legislature of Puerto Rico, the Congress would have used appropriate language in section 319, supra, to express such purpose. That it did not do.

The Organic Act establishing a civil government for Puerto Rico, which, for all practical purposes, is the Constitution of that territory, prohibited the imposition of customs duties on merchandise brought into Puerto Rico from the United States at the time Joint Resolution No. 59 was adopted. Accordingly, the Joint Resolution was void for want of constitutional power to adopt it, and it was not validated by a subsequent amendment to the Organic Act which did not ratify and confirm it, but merely authorized the enactment of such legislation. 12 C. J., pp. 727 and 1091, §§ 99 and 787.

■ Section 319, supra, granted unto the Legislature of Puerto Rico a power which it did not theretofore possess. Such power could be exercised only by the subsequent enactment of the necessary legislation. The instant case is so clearly distinguishable from In re Rahrer, 140 U. S. 545, 565, 11 S. Ct. 865, 35 L. Ed. 572, cited by counsel for the government, that we deem it unnecessary to discuss the decision in that case.

For the reasons herein stated, we are of opinion that the involved duties were unlawfully assessed. Accordingly, the judgment of the United States Customs Court is reversed, and the cause remanded for proceedings consistent with the views herein expressed.

Reversed and remanded.